## In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-1002

AGRON KUCANA,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

On Remand from the
Supreme Court of the United States

DECIDED MAY 4, 2010

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
RIPPLE, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. The Supreme Court re-
manded this proceeding to us for decision on the merits
after holding that 8 U.S.C. §1252(a)(2)(B) does not affect
judicial review of situations in which immigration offi-
cials' discretion is specified by regulation rather than
statute. *Kucana v. Holder*, 130 S. Ct. 827 (2010). Our orig-
inal opinion, 533 F.3d 534 (7th Cir. 2008), had held that

a decision by the Board of Immigration Appeals declining to reopen a removal proceeding may be reviewed only to determine whether the Board misunderstood a regulation, a statute, or the Constitution. 8 U.S.C. §1252(a)(2)(D). The Justices concluded that a court of appeals also may set aside a decision in which the Board has abused its discretion in applying the law to the facts.

Agron Kucana contends that the Board abused its discretion in two ways: by not discussing an affidavit submitted in support of the motion to reopen, and by disregarding his eligibility for adjustment of status. Our 2008 opinion understood the second of these arguments to be a legal one and rejected it as forfeited: Kucana did not make such an argument to the Board, which is not required to consider possibilities never presented for decision. 533 F.3d at 538–39. It is unnecessary for us to revisit that subject. The only remaining question concerns the Board's decision not to mention the affidavit.

Kucana, a citizen of Albania, entered the United States as a business visitor in 1995 and did not leave when his visa expired. He applied for asylum in 1996. When he did not appear at the hearing in 1997, he was ordered removed *in absentia*. Six days later he filed a motion to reopen, contending that he had overslept. An immigration judge denied that motion, and in 2002 the Board of Immigration Appeals affirmed. Kucana did not seek judicial review—nor did he comply with the order to depart. In 2006 Kucana filed another motion to reopen. Kucana, who describes himself as a supporter of democracy and free markets, contended that holders of these

views are at risk of beatings and murder in Albania. The immigration judge denied this motion, and on appeal the Board held that the IJ lacked jurisdiction, because successive motions to reopen must be filed directly with the Board itself.

Treating Kucana's appellate papers as a second motion to reopen, the Board denied that relief because conditions in Albania have not taken a turn for the worse since 2002. That is the right legal question: reopening in an asylum case depends on proof of "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. §1229a(c)(7)(C)(ii). The Board observed that the State Department's 2005 country report for Albania describes it as a stable and peaceful parliamentary democracy. More recently Albania has applied for membership in the European Union, and it joined NATO in 2009. The 2009 country report concludes that Albania is a democratic nation that generally respects human rights and protects the freedom of political dissent. The Democratic Party has been in power since 2005, and Kucana, who describes himself as an adherent to that party (and one of its employees between 1992 and 1994), should not be in fear today on account of his politics.

Kucana argues in this court that the Board abused its discretion because it did not mention Bernd Fischer's affidavit. Professor Fischer narrates Albania's history of dictatorship and repression until the fall of the com-

munist regime in 1992. Disorder followed, with infighting and corruption in government, and frequent brutality by the police and unchecked criminal gangs. The affidavit's picture is one of a country in turmoil where no one was safe. But the key word in this description is "was." The affidavit is a historical narrative. It does not evaluate the risks (if any) that Kucana would have encountered in the Albania of 2006, nor does it conclude that Albania took a turn for the worse between 2002, when the Board denied Kucana's first motion to reopen, and 2006, when he filed his second. To the contrary, Prof. Fischer describes improvements in Albania's human-rights record.

Fischer deems these improvements inadequate and notes remaining deficiencies. (The State Department also finds some shortcomings in Albania's efforts to protect political dissidents from private violence and misconduct by local police, though its view is more optimistic than Fischer's.) But to justify reopening Kucana needed to show that country conditions had deteriorated after 2002 in a way that increased the risks he would face in his native land. Fischer's affidavit did not provide any evidence on that score. So the Board was entitled to disregard it—not because the Board automatically may prefer the State Department's views over those of other evaluators (it can't), but because Fischer's affidavit simply is not material.

Almost everything Fischer said could have been presented in 1997 (when Kucana first moved for reopening), or 2002 (when the Board made its decision on that mo-

tion). Only evidence that could *not* have been presented earlier supports a motion to reopen, see §1229a(c)(7)(C)(ii) and 8 C.F.R. §1003.2(c)(1), and then only to show that risk has increased because of changes in country conditions.

Kucana's memorandum on remand from the Supreme Court all but concedes that the argument based on the Board's failure to mention Fischer's irrelevant affidavit is going nowhere. He asks us to call for a new round of briefs, and hold another oral argument, so that he can advance a different contention: that the Democratic Party comprises antagonistic factions, and that he has angered the dominant faction by public criticism of its conduct.

Our authority is limited, however, to review of the Board's disposition. We must decide whether the BIA abused its discretion in responding to the arguments made to it. The argument that Kucana now wants to advance was not presented to the Board in 2006; it is therefore not open to Kucana in this court.

He proposes to avoid that problem by contending that factionalism within the Democratic Party was the basis of his 1996 application for asylum. This does not help Kucana, because as we have observed several times already a motion to reopen must be supported by proof of *changed* country conditions; proof that an old condition has continued does not suffice. Not that the record shows a current risk of deadly schism within the Democratic Party; that subject was not addressed by the papers that the Board had before it in 2006.

If the risk that Kucana would face in Albania has increased materially since 2006, he can file another motion

to reopen. The only question open today is whether the Board abused its discretion when concluding that the evidence did not show a material adverse change in country conditions between 2002 and 2006. That decision did not constitute an abuse of discretion, so the petition for review is

DENIED.