# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-1982

AUGUSTINE VICTOR, *et al.*,

*Petitioners,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the Board
of Immigration Appeals.
Nos. A070-648-759; A072-414-939; A072-414-940 & A072-414-941

ARGUED NOVEMBER 6, 2009—DECIDED AUGUST 6, 2010

Before POSNER, KANNE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.* Augustine Victor and his family are citizens and natives of Pakistan. Victor, his wife Jacqueline, and their two children came to the United States in April of 2001 as visitors for pleasure authorized to remain for six months. Victor overstayed his visa and at the beginning of 2002 he applied for asylum, naming his wife and children as derivative

beneficiaries.[1] His request languished until he was ultimately charged as removable in 2005. Victor renewed his request for asylum and requested withholding of removal and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, 23 I.L.M. 1027 (1984). In 2007, an IJ denied Victor's requests. The BIA denied his appeal. Two months later Victor moved the BIA to reopen and reconsider, requests which it denied in March of 2009. Victor appealed, but we stayed his appeal pending the Supreme Court's decision in *Kucana v. Holder*, 130 S. Ct. 827 (2010). *Kucana* makes clear that we have jurisdiction to review Victor's appeal, but we ultimately conclude that the BIA did not abuse its discretion when it denied Victor's motions to reopen and reconsider.

## I.

Victor and his family are members of the small minority population of practicing Christians in Pakistan. In 2006, approximately 96% of the Pakistani population were Muslim (the state religion), and the Christian minority made up approximately 1.6% of the population. *Bureau of Democracy, Human Rights, & Labor, U.S. Dep't of State, Pakistan*: *Int'l Religious Freedom Report—2006*

---

[1] This was actually Victor's second asylum application. In 1992, Victor had visited the United States and filed a political asylum application based on his activity in the Pakistani People's Party. He returned to Pakistan before the application was adjudicated. The current application is unrelated.

(Sept. 15, 2006). In April 2001, Victor and his family travelled between 600 and 700 miles from their home in Rawalpindi, Pakistan, to the home of Victor's brother in Hyderabad for his daughter's wedding (Victor's niece) and the festivities leading up to it. Victor's underlying asylum claim stems from an incident that occurred in Hyderabad during the wedding celebration for his niece.

Both Augustine Victor and his wife, Jacqueline, testified at the hearing that the family had been playing music and dancing as part of their customary celebration the night before the wedding. That evening when the azaan (Muslim call to prayer) sounded, a mullah (Islamic cleric) named Mansoor (or Manzoor) Ahmed appeared with six or seven of his followers. They complained that the music and festivities were interfering with their evening prayer at a mosque some two blocks away. Both Victor and his wife testified that when the mullah arrived the music had been lowered to the point that it could not be heard outside of the home. Nonetheless, the mullah came to the door along with his followers, cursing and swearing and calling the family "coffers," which translates to infidels or unbelievers.

Victor testified that he tried to handle the situation to spare his brother from bother, but his attempts to defuse the situation proved futile. The mullah and his followers, some of whom were carrying large sticks, began hitting Victor and his brother. Finally, the mullah threatened to call the police and tell them that Victor had mocked and blasphemed the prophet Muhammad. Pakistan's blasphemy laws prohibit derogatory state-

ments or action against Islam, the Koran, or the prophets. Individuals convicted of blasphemy may be executed.

Before the police arrived, Victor left his brother's home with his pastor, Rafique Masih, who had witnessed the incident. Victor remained at Masih's home until Masih reported back to him that the police had come and that Victor needed to leave the country. Victor went directly to Karachi and then came to the United States. His wife and children returned briefly to the family's home in Rawalpindi and then stayed with an uncle in Rawalpindi until they were able to join Victor in the United States approximately two months later. Victor's brother also moved to another neighborhood in Hyderabad so as to avoid further contact with the mullah, who continued to ask about Victor after his departure.

The IJ denied Victor's request for asylum. As an initial matter, he concluded that the fight during the wedding celebration did not amount to past persecution. Specifically, the IJ reasoned that although the mullah may have overreacted to the music, he had a legitimate request when he approached. The IJ further determined that the ensuing fisticuffs and threat to file a blasphemy charge lacked the severity and immediacy necessary to amount to past persecution.

Second, the IJ concluded that notwithstanding the possibility that a blasphemy charge had been filed against him, Victor had proffered no evidence that either the mullah or the police intended to harm him if he returned to Pakistan. On this point, the IJ concluded that

it was reasonable to require some corroboration of either the filing of a complaint or an outstanding court case against Victor. Because Victor had equivocated on whether a complaint had in fact been filed, the IJ deemed it significant that no supporting documentation existed to verify the existence of a complaint against Victor. The IJ also made much of the fact that Victor's brother had remained in Hyderabad without incident, despite his involvement in the altercation with the mullah. Finally, the IJ necessarily concluded that, having failed to establish his eligibility for asylum, Victor was likewise ineligible for relief under the more stringent requirements for withholding of removal or relief under the Convention Against Torture.

Victor appealed to the BIA, which denied his request for oral argument and adopted and affirmed the decision of the IJ. Victor did not petition this court for review. Later Victor moved the BIA to reopen and reconsider, *see* 8 U.S.C. § 1229a(c)(6)-(7); 8 C.F.R. § 1003.2, arguing that the IJ had underestimated the magnitude of the altercation and the ensuing blasphemy charge. Victor also attached a letter from a former member of the Pakistan National Assembly to his motion stating that blasphemy charges had been brought against Victor. In March 2009, the BIA denied Victor's motion, concluding that it essentially reiterated arguments that he had presented in his original appeal. It also deemed his additional unsworn letter to be cumulative of the statements Victor had already submitted representing that he was subject to blasphemy charges. Victor now petitions for review.

## II.

On appeal, Victor argues primarily that substantial evidence does not support the IJ's initial decision or the BIA's July 2008 opinion adopting and affirming it. For instance, Victor spends much of his brief attacking the IJ's conclusion that the mullah's threats against him did not amount to past persecution. Victor also maintains that the IJ erred by failing to recognize the likelihood that Victor would be tortured if imprisoned on a blasphemy charge.

But it is too late for Victor to make these arguments now. He failed to petition in this court for review of the BIA's July 2008 decision. Instead, Victor filed his motion to reopen and reconsider, which the BIA denied. Because Victor did not appeal from the decision on his asylum claim, we are limited to reviewing the denial of his motion to reopen and reconsider. *See* 8 U.S.C. § 1252(b)(1); *Stone v. I.N.S.*, 514 U.S. 386, 405-406 (1995) (holding that finality of removal order "is not affected by the subsequent filing of a motion to reconsider"); *Asere v. Gonzales*, 439 F.3d 378, 380 (7th Cir. 2008) (same).

Until recently, that would have been the end of Victor's appeal. Prior to the Supreme Court's decision in *Kucana, supra*, we had held that the jurisdiction-stripping provision in 8 U.S.C. § 1252(a)(2)(B)(ii) blocked our review of discretionary decisions conferred upon the Attorney General by regulation, including denials of motions to reopen and reconsider. *See Kucana v. Mukasey*, 533 F.3d 534 (7th Cir. 2008) (motion to reopen) *rev'd by Kucana*, 130 S. Ct. 827; *Johnson v. Mukasey*, 546 F.3d 403

(7th Cir. 2008) *abrogated by Kucana*, 130 S. Ct. at 831. In *Kucana*, the Supreme Court held instead that the jurisdiction-stripping provision applies only to agency decisions made discretionary by statute, not regulation. *Kucana*, 130 S. Ct. at 831, 839-40. Thus, section 1252(a)(2)(B)(ii) does not limit our review of motions to reopen and reconsider to constitutional claims or questions of law, as we had previously held. *See Kucana v. Holder*, 603 F.3d 394, 395 (7th Cir. 2010), *on remand from Kucana*, 130 S. Ct. 827; *Juarez v. Holder*, 599 F.3d 560, 564-65 (7th Cir. 2010).

Thus, we have jurisdiction to review Victor's appeal. However, our review is circumscribed in light of the BIA's "broad discretion" over motions to reopen. *Kucana*, 130 S. Ct. at 834 (internal quotation marks and citation omitted). Thus, we review the BIA's decision only for abuse of discretion. *Id.; see also Raghunathan v. Holder*, 604 F.3d 371, 376 (7th Cir. 2010). Under this deferential standard, we will uphold the Board's decision unless it "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Achacoso-Sanchez v. I.N.S.*, 779 F.2d 1260, 1265 (7th Cir. 1985) (adopting abuse of discretion standard applicable to motions to reopen); *see also Raghunathan*, 604 F.3d at 376. Moreover, we have recognized that in this particular context, the abuse of discretion standard is especially deferential in light of the BIA's broad latitude in reopening and reconsidering cases. *See Achacoso-Sanchez*, 779 F.2d at 1264-65 (explaining that lack of standards governing BIA's power to reopen results in "exceedingly constricted" judicial

review); *see also I.N.S. v. Abudu*, 485 U.S. 94, 107-08, 110 (1988) ("[T]he reasons for giving deference to agency decisions on petitions for reopening or reconsideration in other administrative contexts apply with even greater force in the INS context.").

Victor's motion to the BIA requested relief in the form of both reconsideration and reopening. The two types of relief serve distinct purposes. A motion to reconsider contends that the original decision was somehow erroneous. Such a motion asks the BIA to revisit its decision in light of "additional legal arguments, a change of law, or an argument that was overlooked earlier." *Patel v. Gonzales*, 442 F.3d 1011, 1015 (7th Cir. 2006) (quoting *Kurzban's Immigration Law Sourcebook* 738, 744 (8th ed. 2002)). In contrast, a motion to reopen does not take issue with the BIA's decision at the time it was entered, but instead asks the BIA to reexamine its opinion in light of evidence that was unavailable at the time of the original opinion. *Mungongo v. Gonzales*, 479 F.3d 531, 534 (7th Cir. 2007).

We consider Victor's arguments in support of each in turn. A motion to reconsider "shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1). Victor argued in his motion that the IJ had ignored the import of a charge under Pakistan's blasphemy law, which is enforced with a penalty of death. Essentially, Victor maintained that despite testimony explaining the mullah's threat to file a police report accusing Victor of making fun of Islam and blaspheming the prophet Mohammed, the IJ failed

to recognize the dispute as more than a personal altercation or disturbance of the peace. Victor also argued that the IJ overlooked the certainty that once placed in police custody, Victor would be tortured. Finally, Victor faulted the IJ for failing to recognize what social group Victor claimed membership in—that of minority Christians in Pakistan.

We are satisfied that the BIA did not abuse its discretion when it denied Victor's motion to reconsider. Like his motion before the BIA, his brief on appeal takes aim at the IJ's underlying decision and argues essentially that the IJ got it wrong. Specifically, Victor maintains that being charged with blasphemy rises above the level of mere harassment. He also makes much of the IJ's failure to adequately recognize the mullah as the instigator of the conflict. But neither of these alleged errors in the IJ's decision are the sort of error of fact or law warranting relief in a motion to reconsider. Victor is not arguing that the IJ or BIA applied an incorrect legal standard to his claim; he is simply unhappy with the outcome reached. These arguments should have been presented in a petition for review of the underlying removal order.

The one potential error of law that Victor identifies—albeit in his discussion of the IJ's underlying opinion and not his motion to reopen—is the IJ's failure to recognize Victor's membership in a social group. In his opinion, the IJ curiously stated that he was "not able to identify any particular social grouping." We agree with Victor that this observation is troubling; it seems

apparent that Victor's claim is anchored in his status as a minority Christian in a Muslim state. But a careful read of the IJ's discussion on this point makes clear that the IJ's primary focus was on the fact that Victor himself apparently failed to identify a social group. Thus, although the IJ was "not attempting to be hyper-technical with the respondent," he did want to emphasize that Victor bore the "responsibility to define the social grouping."

Moreover, neither the IJ nor the BIA relied on Victor's alleged failure to identify a social group when denying his asylum application. Thus, even if we were to consider the IJ's mistake the sort of "error of law" contemplated by a motion to reconsider, it would be harmless. *See Kadia v. Gonzales*, 501 F.3d 817, 821 (2007) (noting that "the doctrine of harmless error is applicable to judicial review of immigration decisions" but remanding on account of numerous uncorrected mistakes by the IJ). In short, Victor's motion to reconsider did not present a change in law or point out additional legal arguments that were erroneously overlooked by the BIA. Thus, the BIA did not abuse its discretion when it denied Victor's motion to reconsider. *See, e.g., Mungongo*, 479 F.3d at 534-35.

That leaves the possibility that the BIA abused its discretion when it also denied Victor's motion to reopen. The BIA has discretion to reopen a removal proceeding when the alien presents material evidence that "was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1).

To support his motion to reopen, Victor attached an affidavit from Mr. Simon Jacob Gill, a former member of the Pakistan National Assembly, attesting to the fact that he had met with the police and was told that the mullah had recorded a complaint against Victor under the blasphemy law.

Here too, the BIA was within its considerable discretion when it denied Victor's motion to reopen. First, it is not clear why Victor could not have obtained Gill's affidavit before his hearing. Gill recounted that because he is an ex-parliamentarian the Pakistani authorities respect him, and that he met with the police and district authorities about Victor's case. He stated that the authorities had told him that Mr. Manzoor (the mullah) had "recorded a written complaint against [Victor] under the Blasphemy Law." Gill also attested that the authorities wanted Victor to appear so that they could investigate the charges and that they could not give any guarantee that he would not be charged and arrested following investigation. There is nothing in Gill's affidavit or Victor's motion explaining why this information was "unavailable" at the time of Victor's hearing.

Moreover, the affidavit was not "material"—it simply reaffirmed the testimony and exhibits presented at Victor's hearing. For example, Victor himself testified at his hearing that a criminal complaint had been filed against him (although he did equivocate on this point at times). Jacqueline also testified that there were blasphemy charges against her husband and that the penalty for blasphemy was death. And Victor submitted his brother Nelson Paul's statement attesting that the

mullah had "registered" criminal cases and "nominated" Victor as the "main accused." Victor's reverend, S.K. Dass, also submitted a statement to the effect that the mullah planned to register a criminal case targeting Victor as the "main accused." So Simon Jacob Gill's affidavit, although further buttressing the statements and exhibits presented at Victor's hearing, was not "new evidence." Moreover, Victor has presented no evidence that the affidavit was unobtainable before his initial hearing. *See* 8 U.S.C. § 1229a(c)(7)(B); *Kucana*, 603 F.3d at 396-97 ("Only evidence that could *not* have been presented earlier supports a motion to reopen[.]"). Thus, the BIA did not abuse its discretion by denying Victor's motion to reopen.

### III.

We are troubled by the prospect that Victor could return to Pakistan to find an outstanding criminal complaint for blasphemy against him, particularly in light of the potential consequences if the police move forward on the complaint. But Victor's failure to appeal from the BIA's decision affirming the IJ's underlying decision severely cabins our review. In light of our limited role in assessing whether the BIA abused its discretion when denying Victor's motions to reconsider and reopen, there is little we can do to assist Victor and his family. As discussed above, the denial of Victor's motions was not an abuse of discretion. We thus DENY Victor's petition for review.