In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1932
SHERBANO MOOSA,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A076 775 172

ARGUED SEPTEMBER 23, 2010—DECIDED MAY 5, 2011

Before CUDAHY, FLAUM, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Sherbano Moosa, a citizen of
Pakistan, entered the United States on a visitor's visa
in 1995 and remained after her visa expired. Moosa
was eventually ordered removed, but she apparently
ignored that command and remained in the country.
Nearly seven years later, Moosa filed a motion to reopen
her proceedings with the Board of Immigration Appeals
("Board"). In her motion, Moosa argued that "changed

country conditions" in Pakistan made her eligible for asylum and warranted reopening her case. Moosa also asked the Board to reopen her case on its own motion. Finding insufficient evidence of changed circumstances and a failure to present a *prima facie* case for asylum, the Board denied Moosa's motion and declined to reopen the proceedings on its own. Moosa now petitions this court for review of the Board's decision. She offers three grounds for relief: first, that the Board abused its discretion by denying her motion in a manner that exceeded its authority; second, that it used procedures that fell below constitutional due process standards; and third, that it committed legal error as it analyzed her evidence of changed conditions. None of these is enough to override the Board's broad authority here, however, and so we deny the petition for review.

**I**

Moosa legally entered the United States on a 6-month non-immigrant visa in June 1995, but, as we noted, she overstayed that term. Seeking to become a lawful permanent resident, but without much more than this intention, Moosa applied for an adjustment of status to that of permanent resident three years later. Moosa's application, however, offered no reason that the governing laws would recognize for granting this relief, and not surprisingly, her application was denied. See 8 U.S.C. §§ 1255-58. The legacy Immigration and Naturalization Service instituted removal proceedings against Moosa in 2000.

At her removal hearing before an Immigration Judge ("IJ"), Moosa's lawyer advised her to invoke her Fifth Amendment right to remain silent. Consistent with this questionable counsel, see *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038-39 (1984) (holding that a "deportation proceeding is a purely civil action," not a "criminal" proceeding), Moosa refused to answer even the IJ's most basic questions, covering such topics as her country of origin, her initial reasons for visiting the United States, her reasons for pursuing permanent residency, and her marital status. Stymied, the IJ turned to the information in Moosa's adjustment of status application; this made her removability obvious. Indeed, Moosa's attorney spoke up on one point and asserted that Moosa had no fear of returning to Pakistan. The IJ entered a removal order, and—on the basis of the lawyer's comment—noted that Moosa had no desire to seek other relief, such as asylum, withholding of removal, or a claim under Article 3 of the U.N. Convention Against Torture. The Board affirmed without opinion in 2002.

Like many others before her, Moosa remained in the country despite the removal order. See, *e.g.*, *Kucana v. Holder*, 130 S. Ct. 827, 832 (2010); *Liang v. Holder*, 626 F.3d 983, 984 (7th Cir. 2010); *Cheng Chen v. Gonzales*, 498 F.3d 758, 759 (7th Cir. 2007). Almost seven years later, and represented by new counsel, Moosa filed a motion to reopen her proceedings in 2009. Such a motion ordinarily must be filed within 90 days, but Moosa argued that changed circumstances in Pakistan should exempt her from the time requirement. See 8 U.S.C. § 1229a(c)(7). To succeed, Moosa needed to point

to evidence materially related to her asylum application and unavailable or undiscoverable at the time of her initial hearing in 2001. *Id.* And, to be eligible for asylum, Moosa would ultimately need to establish her status as a "refugee" in Pakistan, which requires demonstrating a well-founded fear of future persecution attributable to her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1158(b)(1)(B).

Moosa argued that if forced to return to Pakistan she faced a serious risk of persecution on account of her membership in the social group of "single Westernized women." Moosa remains a committed Muslim, but she maintains that, after 15 years of continuous residency in the United States, she has come to identify with the social and political beliefs of Western women. She holds pro-democratic values; she believes herself entitled to equal treatment with men; and she is accustomed to exercising broad personal choice. Citing an influx of Taliban forces in the northwest region of Pakistan near the Swat Valley in 2009 (an area approximately 900 miles from Moosa's home)—and an attendant spread of strict Sharia law there—Moosa argued that mistreatment of women and other persons with Western values has escalated. Moosa further claimed that women like her are frequently harmed by religious leaders in the Taliban, who force women to adhere to different social roles than men, afford women fewer rights, and subject them to physical violence if these women do not adequately comply with the tenets of Islam as understood in Sharia law or are perceived as opposing it. Moosa

believes that her time in the United States has made her Westernization and opposition to certain tenets of Islam either obvious or easily imputed to her, and thus that she has a legitimate fear of persecution based on her social group.

For support, Moosa pointed to a variety of sources: news articles from 2008 and 2009 describing the rise of the Taliban and spread of Sharia law in and around the Swat Valley; reports from human rights groups describing conditions faced generally by women in Pakistan (which are especially tough for those in rural regions); a U.S. Department of State report from 2001 describing the Taliban's "war against women" in Afghanistan; and the State Department's 2008 human rights report and its July 2009 travel warning for Pakistan. Moosa also submitted an affidavit personally describing her fear of persecution.

In an opinion signed by one member, the Board denied Moosa's motion, citing two grounds. First, it found that Moosa failed to show changed circumstances because the record was barren of any material, either in her current motion or the administrative record generally, that would establish country conditions in Pakistan at the time of her 2001 hearing. Second, the Board found that Moosa could not make out a *prima facie* case for asylum because the evidence she submitted was too speculative to demonstrate a well-founded fear of persecution. In explaining its second finding, the Board discussed the substance of Moosa's evidence but noted that Moosa failed to point to "specific passages" in

her numerous exhibits "that actually corroborate[] her sweeping assertion regarding the treatment of single women in Pakistan." The Board did not mention Moosa's affidavit. It ultimately concluded that Moosa's motion did not demonstrate changed circumstances and denied her request for asylum as untimely. Finding no exceptional circumstances, and again pointing to Moosa's failure to make out a *prima facie* showing for asylum, the Board also denied Moosa's request to reopen her proceedings as a matter of its discretion. This petition followed.

## II

Before this court, Moosa argues that the Board abused its discretion in denying her motion to reopen. But in light of the Board's broad discretion to deny a motion to reopen, see *Kucana*, 130 S. Ct. at 834, we will not reverse the Board's decision "unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Mansour v. INS*, 230 F.3d 902, 907 (7th Cir. 2000) (internal quotation marks and citations omitted).

## A

Moosa first argues that the Board exceeded its authority when it looked beyond the question whether she could show changed circumstances in Pakistan and took a peek at the merits of her case for asylum. In Moosa's view,

the Board was not permitted to allow any spillover from one issue to the other; instead, she insists, it had to keep them strictly separated and consider only whether the evidence she submitted is "based on changed country conditions" in Pakistan, and whether that evidence is "material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); see 8 C.F.R. § 1003.2(c)(3)(ii). She notes in this connection that the requirements for demonstrating eligibility for asylum fall under a different statutory section, 8 U.S.C. § 1158(b).

Moosa's theory makes no sense as a matter of sound agency procedure, and (unfortunately for Moosa) it is also at direct odds with the law. After analyzing the evidence presented to it and providing a rational explanation, the Board may deny a motion to reopen by finding that "the movant has not established a *prima facie* case for the underlying substantive relief sought." *INS v. Abudu*, 485 U.S. 94, 104 (1988); accord *INS v. Doherty*, 502 U.S. 314, 323 (1992); *Mansour*, 230 F.3d at 907. In fact, the regulations on which Moosa relies directly refute her position: "The Board has discretion to deny a motion to reopen even if the party moving has made out a *prima facie* case for relief." 8 C.F.R. § 1003.2(a).

This is an entirely reasonable way to run things. The Board is required to evaluate whether the alleged changed circumstances are "material" to an applicant's request for asylum. This in turn invites the Board to determine whether these changes provide the applicant with a well-founded fear of persecution. We cannot

imagine the Board's effectively performing that function, or providing a reasoned basis for why the asserted changed circumstances alter (or fail to alter) its assessment of an asylum applicant's claim, without at least the option of looking at whether there is a plausible asylum claim at all. *Cf. Zhu v. Holder*, 622 F.3d 87, 92 (1st Cir. 2010) (noting that an applicant's failure to establish a "credible claim for asylum" provided a basis for determining that "the alleged changes in country conditions were immaterial"). It is more likely that it would be an abuse of discretion for the Board to fail to explain how the evidence of changed circumstances relates (or fails to relate) to an asylum claim. See *Nken v. Holder*, 585 F.3d 818, 822-23 (4th Cir. 2009); *Gebreeyesus v. Gonzales*, 482 F.3d 952, 954-56 (7th Cir. 2007). Accordingly, when the Board's decision is supported by a rational explanation, we have found no abuse of discretion when it has looked at a movant's *prima facie* case for asylum in evaluating her motion to reopen. See, *e.g.*, *Liang*, 626 F.3d at 991; *Awad v. Ashcroft*, 328 F.3d 336, 340-42 (7th Cir. 2003). Doing so here was not beyond the Board's authority or an abuse of discretion.

B

Moosa next argues that the Board denied her constitutional right to due process when it dismissed her motion to reopen. In Moosa's view, the Board deprived her of a meaningful opportunity to be heard by inadequately analyzing the evidence she included. Aside from contradicting her prior claim that the Board may not analyze

this evidence at all, Moosa's due process argument, which we review *de novo*, is a non-starter. For support, Moosa cites cases that discuss the right to due process *during* a removal proceeding. *E.g.*, *Floroiu v. Gonzales*, 481 F.3d 970, 974 (7th Cir. 2007); *Kerciku v. INS*, 314 F.3d 913, 917-19 (7th Cir. 2003) (*per curiam*). Moosa is not saying, however, that her initial proceedings violated her due process rights. She challenges only the Board's discretionary decision to deny her motion to reopen those proceedings. *Doherty*, 502 U.S. at 323; 8 C.F.R. § 1003.2(a). But, because Moosa has no liberty or property interest in obtaining discretionary relief, *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008), her "right to due process does not extend to proceedings that provide only . . . such relief." *Hamdan v. Gonzales*, 425 F.3d 1051, 1061 (7th Cir. 2005).

## C

For her final argument, Moosa re-brands her complaint that the Board failed adequately to analyze the evidence as a claim of legal error. See *Iglesias*, 540 F.3d at 531. Though the Board's discretion to deny a motion to reopen is broad, that discretion is not unlimited; its decisions must be supported by a reasoned explanation that correctly reflects the law. Such an explanation is impossible if the Board "completely ignores the evidence that a petitioner presents," *id.*, and we have consistently found an abuse of discretion where the Board ignores or misapplies an applicant's evidence. See, *e.g.*, *Joseph v. Holder*, 579 F.3d 827, 828, 830 (7th Cir. 2009) (discussing

prior remand); *Kebe v. Gonzales*, 473 F.3d 855, 857-58 (7th Cir. 2007) (collecting cases).

As we noted above, the Board denied Moosa's motion to reopen on two separate grounds: the lack of evidence of "changed" circumstances, and the failure to support a *prima facie* case for asylum.

The Board's reasoning on the first ground does not mention the rather unusual posture of this case, which presents a request to *reopen* a proceeding for purposes of seeking asylum where the earlier proceeding did not involve asylum (and thus, understandably, did not develop facts pertinent to such a claim). The Board noted that Moosa's motion included information related to *current* conditions in Pakistan but was faulty because it included no description of country conditions at the time of her initial hearing in 2001. The Board reasoned that without this prior background it could not derive a baseline for comparing circumstances to determine whether conditions had *changed.* Moosa responds that the evidence she submitted described events which took place in 2008 and 2009. By definition, these events could not have taken place before her initial hearing. We have no quarrel with Moosa's assertion that an applicant need not have a prior asylum application on the books to provide the Board with information of "changed" circumstances. But this does not help her here. Though she could not rely upon documents available at the time of her 2001 hearing, nothing prevented Moosa from supporting her motion to reopen with country reports, affidavits, or other information describing conditions in

Pakistan in 2001 that became available after the hearing. If the government in power in 2009 has a policy of persecuting a certain group, for example, one can point out when that group took over. If it was some time after 2001, that would be evidence supporting a finding of changed circumstances.

We readily acknowledge that there is nothing wrong in principle with circumstantial evidence of changed circumstances. The problem for Moosa is that her circumstantial evidence was incomplete. She submitted a 2009 State Department travel warning that militant groups promised to "step up attacks against both civilian and government targets in Pakistan's cities," and that reported on events transpiring "in the last 14 months." She also submitted a 2008 State Department human rights report that includes broader background information on changes in how Pakistani women have been treated over the past decade; in 2006, for example, the government passed the Women's Protection Act, which prevented "Koranic punishments" for violations of Sharia law "including amputation and death by stoning." But this evidence still fails to provide a baseline for comparison. Something like a State Department report from 2002 would have qualified as evidence that was unavailable in 2001, yet it could have furnished a basis for finding that matters were changing for the worse.

Even if we were to find that the Board gave insufficient weight to the circumstantial evidence Moosa did present, we would still have to reject Moosa's petition. The Board's alternate ground for decision lies com-

fortably within its discretion. In finding that Moosa failed to present a *prima facie* case for asylum, the Board pointed out that she submitted evidence only of broad social strife in Pakistan—that is, the rise of the Taliban and the adoption of Sharia law—which occurred nearly 900 miles away from her hometown of Karachi. On the basis of these facts, the Board found that Moosa's asserted fear of persecution on the basis of being a single Westernized woman in Pakistan was too speculative to warrant relief.

The reasons cited by the Board and its conclusions are consistent with our repeated reminder that "general conditions of hardship that affect entire populations . . . are not persecution." *Ahmed v. Gonzales*, 467 F.3d 669, 673 (7th Cir. 2006); see also *Sharif v. INS*, 87 F.3d 932, 935 (7th Cir. 1996) ("[H]arsh conditions shared by an entire population do not amount to persecution. Nor does punishment which results from violating a country's laws of general applicability, absent some showing that the punishment is being administered for a nefarious purpose."). On a different, more particularized record, the Board may well come to the opposite conclusion. We are obviously not saying that genuine problems do not exist for women like Moosa. But the responsibility for drawing lines here lies primarily with the Board, which can act only on the facts put before it.

We note finally that in reaching its conclusion regarding her *prima facie* case for asylum, the Board did not discuss Moosa's affidavit. It complained that Moosa

did not refer to "specific passages" that might corroborate her asylum claim. If the Board had, as Moosa alleges, ignored important parts of her evidence, we might be concerned. But our review satisfies us that this is not a case where the Board completely ignored the substance of Moosa's argument regarding her eligibility for asylum. The fact that it did not single out her affidavit for discussion is not enough to undermine its decision. See, *e.g.*, *Kucana v. Holder*, 603 F.3d 394, 395-97 (7th Cir. 2010); *Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2005) (*per curiam*).

Accordingly, Moosa's petition for review is DENIED.