NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued December 17, 2013
Decided January 2, 2014

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-2139

| | |
|---|---|
| IVAN IVANOVYCH DUTKA, *et al.*, | Petition for Review of an Order of the |
| *Petitioner*s, | Board of Immigration Appeals. |
| | |
| *v.* | Nos. A088 910 379, A088 910 380, |
| | A088 910 381 & A089 118 724 |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States | |
| *Respondent*. | |

### O R D E R

The Dutka family—Ivan Ivanovych Dutka (a 45-year-old native and citizen of Ukraine), his wife, and their two children—was ordered removed after Ivan's temporary visa expired and he failed to obtain permanent residency. The Dutkas did not apply for any discretionary relief during removal proceedings. Less than a month after the final removal hearing, however, they filed a motion to reopen so that Ivan could apply for asylum because (they said) the Ukrainian government had pivoted away from democratic principles and forged closer ties with Russia. The IJ denied the motion, the Board affirmed, and the Dutkas petition for review of the Board's order. We

deny the petition because the evidence submitted by the Dutkas fails to establish that Ivan is prima facie eligible for asylum.

Ivan entered the United States in 1996 on a three-month visitor's visa and overstayed. His wife and two children joined him by 2001; none of them were lawfully admitted to the U.S. (how they managed to enter the U.S. without a visa is not reflected in the record). Also in 2001, an Illinois construction company applied for labor certification on Ivan's behalf with the Department of Labor. This was the first step towards his obtaining permanent residency based on employment.[1] Six years later, the Department of Labor issued the certification. The company then filed a visa petition on Ivan's behalf, but the Department of Homeland Security denied the petition (the reason for the denial also is not in the record).

In June 2009, DHS initiated removal proceedings against the Dutkas. The Dutkas conceded removability and acknowledged through counsel that they were not eligible for adjustment of status; they also declined to apply for asylum or withholding of removal, telling the IJ that they had no fear of persecution if returned to Ukraine. At the final removal hearing on October 13, 2010, the IJ entered voluntary departure orders, and the Dutkas did not appeal.

Within a month the Dutkas moved to reopen, asserting that Ivan was eligible for asylum, withholding of removal, and protection under the Convention Against Torture because the February 2010 election of President Viktor Yanukovych ushered in major political changes in Ukraine, including closer ties to Russia, making the country less democratic. The Dutkas maintained that Ivan feared persecution based on his membership in a particular social group: former members of special military units who have also lived abroad. In support of the motion, Ivan submitted a vague affidavit in

---

[1] An employer that wishes to hire a foreign worker to work permanently in the U.S. usually "must obtain a … labor certification … from the [Department of Labor's] Employment and Training Administration" before submitting a petition to the U.S. Citizenship and Immigration Services. *Permanent Labor Certification Details*, U.S. DEP'T OF LABOR EMP'T & TRAINING ADMIN., http://www.foreignlaborcert.doleta.gov/perm_detail.cfm (last updated June 20, 2013). The labor certification confirms "that there are not sufficient U.S. workers able, willing, qualified and available to accept the job opportunity in the area of intended employment and that employment of the foreign worker will not adversely affect the wages and working conditions of similarly employed U.S. workers." *Id.*

which he attested that his relatives in Ukraine warned him that Ukraine's current government may target him because of his living abroad in the U.S., his former military service, and his participation in the movement for Ukrainian independence more than 20 years ago. According to Ivan, he had belonged to a special military unit in the Soviet Army from 1985 to 1987 (while Ukraine was part of the Soviet Union). After he left the military, he participated in the movement for Ukrainian independence but stopped after he was visited by security officers who warned him that, as a former member of the special military unit, he could not participate in the movement. In addition to Ivan's affidavit, the Dutkas submitted nine newspaper articles (all in English) that discussed Ukraine's political tilt towards Russia; six of the articles were published before their final removal hearing. In their reply brief, the Dutkas justified their failure to apply for asylum at their removal proceedings by arguing that the changes in Ukraine did not "crystallize" until local elections in October 2010 (two weeks after their hearing).

The IJ denied the motion to reopen. He concluded that the Dutkas' evidence and assertions were too vague to establish their eligibility for the requested relief. The IJ explained that the Dutkas' arguments were further undermined by the fact that they had the opportunity to seek discretionary relief after the February 2010 elections in Ukraine but chose not to do so.

The Dutkas appealed to the Board, repeating the arguments they had made to the IJ but also referring to events that had occurred in the roughly three months since they sought reopening: the arrest and prosecution of the president's political opponents after the October 2010 local elections, the physical attacks and detentions of political activists, and the warnings issued by the U.S. government and others to Ukraine's leadership expressing concern about the politically motivated arrests. The Dutkas also slightly revised Ivan's social group claim as belonging "to a particular social group of individuals who have lived outside of the Ukraine and support Ukrainian independence."

The Board affirmed, adopting the IJ's reasoning. The Board concluded that the Dutkas had not presented new material evidence establishing Ivan's prima facie eligibility for asylum, withholding of removal, or protection under the Convention Against Torture. The Board noted that Ivan did not claim ever to have suffered persecution in Ukraine and emphasized that vague statements from relatives were insufficient to establish a material change in country conditions. The Board also pointed out that the election of Vicktor Yanukovych and much of the Dutkas' evidence preceded the removal hearing at which they disclaimed having any fear of persecution. The

Board acknowledged the Dutkas' argument about the later local elections but agreed with the IJ that, even taking those elections into account, Ivan had not established prima facie eligibility for relief.

In their petition for review, the Dutkas argue that the Board abused its discretion by failing to consider evidence (a single newspaper article from *The Ukrainian Weekly* in November 2010) showing that the local elections in 2010 constituted changed country conditions in Ukraine. The single article describes the October 2010 local elections, and the arrest and intimidation of journalists, scholars, activists, and political opponents in the run-up to those elections.

In order to reopen removal proceedings, the Dutkas had to offer evidence that was "material and was not available and could not have been discovered or presented" at their removal hearing.[2] 8 C.F.R. § 1003.23(b)(3). Because they had forgone the opportunity to apply for discretionary relief at their removal hearing, they also had to establish that they sought relief "on the basis of circumstances that ha[d] arisen subsequent to the hearing." *Id.* But even if the Dutkas' motion to reopen satisfied these requirements, it could still be denied properly if "it fail[ed] to establish [their] prima facie eligibility for the underlying relief sought." *Boika v. Holder*, 727 F.3d 735, 738 ( 7th Cir. 2013); *Moosa v. Holder*, 644 F.3d 380, 385 (7th Cir. 2011). Because Ivan never contended that he had suffered past persecution in Ukraine, establishing prima facie eligibility for asylum would require him to present evidence of a well-founded fear of *future* persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See Bathula v. Holder*, 723 F.3d 889, 898 (7th Cir. 2013); *Cece v. Holder*, 733 F.3d 662, 668 (7th Cir. 2013) (en banc). Such evidence must consist of "specific, detailed facts supporting the reasonableness of [the petitioner's] fear that [he] will be singled out for persecution." *Salim v. Holder*, 728 F.3d 718, 724 (7th Cir. 2013).

---

[2] As the government's brief points out, the Board cited the wrong provisions of the statute and regulations. The Board cited 8 U.S.C. § 1229a(c)(7)(C)(ii) and 8 C.F.R. § 1003.23(b)(4)(i), which require a showing of "changed country conditions when" an alien files an *untimely* motion to reopen or seeks to file more than one such motion. But the Board's error was harmless because it later cited the correct regulation and correctly analyzed the Dutkas' motion as a *timely* motion to reopen.

We conclude that the Board did not abuse its discretion by concluding that the Dutkas' evidence failed to establish Ivan's prima facie eligibility for asylum.[3] The Dutkas failed to present specific, detailed facts supporting the reasonableness of Ivan's fear that he will be singled out for persecution based on his membership in a special military unit, his support of Ukrainian independence in 1989 and 1990, or his having lived outside of Ukraine. True, the Board did not specifically mention the article about the local elections, but the Board was required to address only material evidence. *See Kebe v. Gonzales*, 473 F.3d 855, 857 (7th Cir. 2007). The article here addresses only the persecution of journalists, scholars, activists, media owners, and opposition figures, and Ivan is none of those things.[4] And although the "rampant corruption" that the article identifies undoubtedly affects all who live in Ukraine, "[g]eneral conditions of hardship that affect entire populations … are not persecution." *Moosa*, 644 F.3d at 387 (internal quotation marks omitted). Moreover, Ivan's statement in his affidavit that relatives warned him that he "may become a target" of the Ukrainian administration "lack[s] … specificity, particularity, or substantiality." *Bolante v. Mukasey*, 539 F.3d 790, 794 (7th Cir. 2009) (petitioner's fear of persecution was objectively unreasonable where the testimony regarding threats to petitioner's son and family did not "identify the source of the threat" or "indicate that they [were] motivated by any animus towards" the petitioner and the rest of petitioner's evidence also lacked clarity).

The Dutkas ask us to take judicial notice of "statements from the U.S. State Department and international governmental monitoring bodies show[ing] that the October 2010 local elections … marked a defining point in Ukraine's turn away from democratic norms." Although we may, as a general matter, "take judicial notice of changed conditions in the alien's country of origin," these statements, like the Dutkas' other evidence, "fail to demonstrate how these changes affect [Ivan's] individual

---

[3] Because Ivan did not establish prima facie eligibility for asylum, he necessarily failed to establish prima facie eligibility for withholding of removal or protection under the Convention Against Torture, *see Singh v. Holder*, 720 F.3d 635, 643 (7th Cir. 2013), so it was unnecessary for the Board to consider these alternative grounds for relief.

[4] Ivan *was* politically active 25 years ago. He attested that he was active in the movement for Ukrainian independence at some point between 1987 and 1990, but he stopped participating in the movement after security officers warned him to cease his political activities. There is no evidence in the record—and Ivan does not assert—that he has been politically active since 1990 or that he will be politically active if he returns to Ukraine.

situation." *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 925 (7th Cir. 2005). And though governmental repression, political unrest, and the movement to topple the current Ukrainian president all continue to grow, even the current country conditions do not establish Ivan's prima facie eligibility for asylum, given his vague and general explanation of why he fears persecution.

The petition for review is DENIED.