NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 6, 2014[*]
Decided February 6, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-2014

| | |
|---|---|
| LIZHU LIU,<br>    *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A077-293-641 |
| ERIC H. HOLDER, JR.,<br>Attorney General of the United States,<br>    *Respondent*. | |

**O R D E R**

Lizhu Liu, a Chinese citizen, moved to reopen her immigration proceedings, asserting that changed country conditions in China qualify her for asylum based on her recent conversion to Christianity and China's repression of it. The Board of Immigration Appeals denied Liu's motion to reopen, reasoning that she had not shown a material

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the petition is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

change in China's attitude toward Christianity. Because the Board did not abuse its discretion, we deny Liu's petition for review.

Liu attempted to enter the United States in 1999 by presenting a passport bearing another person's name. The former Immigration and Naturalization Service charged her with removability, alleging that she lacked a valid entry document and had lied about a material fact (her name) when she entered. *See* 8 U.S.C. § 1182(a)(6)(C)(i), (a)(7)(A)(i)(I). Liu conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture. She asserted that the Chinese government forced her to wear an intra-uterine device and later sterilized her for violating China's family planning policies by having two children.

The IJ denied her applications in 2001 and ordered her removed to China. The IJ concluded that Liu was not credible, citing her lies to immigration authorities when she entered the country, her inconsistent testimony, and the absence of convincing documents to corroborate her claim. The Board dismissed Liu's administrative appeal, and Liu did not petition for review.

Despite the removal order, Liu remained in the United States. Ten years later, in January 2013, Liu moved to reopen her immigration proceedings, raising a new fear: persecution in China based on her religious beliefs. She asserted that she recently joined an Evangelical church and had sent religious materials to her son who remains in her former neighborhood in the city of Changle, located in Fujian Province. She explained that after Chinese authorities discovered that Liu sent these materials, a neighborhood committee in Changle "summoned" her to surrender and "threatened" her with five years in jail for illegally distributing cult materials. She contended that her recent conversion and this notice from the neighborhood committee constitute changed circumstances in China that justify reopening her immigration proceedings. The government countered by comparing two reports from the State Department that, it insisted, show no material change in the situation that Christians face in China. The first, from 1999, is the Country Report on Human Rights in China, which recounts "intensified" control over religious freedom. The second is the 2011 International Religious Freedom Report for China, which says that in some places religious freedom has "deteriorated."

The Board concluded that Liu had not established changed country conditions in China and denied her motion to reopen. The Board explained that the two reports demonstrate that the Chinese government has restricted its citizens' religious freedoms

since at least 1999. And though the 2011 Report states that respect for religious freedom has "deteriorated," the Board observed that the Report did not specify when or where the deterioration had occurred. Addressing the notice from the neighborhood committee threatening arrest, the Board questioned the document's reliability for three reasons: It was not properly authenticated under 8 C.F.R. § 1287.6(b)(2), the information in the notice conflicted with both State Department reports (which said that government officials—not neighborhood committees—enforce religious restrictions), and the IJ had previously deemed Liu to be not credible. Liu timely petitioned for review.

In her petition Liu maintains that the Board should have reopened her case based on the neighborhood notice and State Department reports. A motion to reopen filed more than 90 days after a removal order must show changed country conditions in the country to which removal has been ordered. 8 U.S.C. § 1229a(c)(7)(C)(i), (ii). We will not disturb the Board's decision to deny a motion to reopen "unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis like invidious discrimination against a particular race or group." *Moosa v. Holder*, 644 F.3d 380, 384 (7th Cir. 2011) (citation omitted).

Liu first argues that the Board improperly disbelieved her testimony about the neighborhood committee's notice and summons by relying on the IJ's earlier adverse credibility finding. Liu is correct that the adverse credibility finding on her earlier asylum claim does not automatically discredit her later assertions about the notice. *See Gebreeyesus v. Gonzales*, 482 F.3d 952, 955 (7th Cir. 2007); *Guo v. Ashcroft,* 386 F.3d 556, 562 (3d Cir. 2004). But the Board discounted the notice for two other, valid reasons.

First, the Board correctly observed that the notice is unauthenticated. Though the authentication procedure of 8 C.F.R. § 1287.6 is not the only way that an alien can authenticate a copy of an official record, *see Qui Yun Chen v. Holder*, 715 F.3d 207, 211 (7th Cir. 2013), Liu does not direct us to any evidence of the copy's authenticity. But even if she had, the Board also relied on a contradiction between the notice and the Religious Freedom Report and Country Report. Those two reports state that the enforcement of religious restrictions in China rests with local religious-affairs officials, the police, or the public security bureau, and not, as the notice implies, neighborhood committees. Liu cited to the Board nothing that resolved that contradiction. She now cites to an excerpt from the 2011 Report that she believes shows that neighborhood committees are involved in restricting Christian worship. We need not consider an argument that Liu did not present to the Board. *See* 8 U.S.C. § 1252(b)(4)(A). But the excerpt does not help her anyway because it says only that neighborhood committees

inform on Falun Gong activists, not Christian practitioners. Thus, the Board permissibly relied on the contradiction between the reports and the notice, combined with the notice's lack of authentication, in determining that it should not give the notice weight. *See Xiao Jun Liang v. Holder*, 626 F.3d 983, 990–91 (7th Cir. 2010) (affirming Board's decision to disregard Chinese village notice because it was not authenticated and other evidence undermined its reliability).

Liu next insists that the Board should have inferred from the 2011 Religious Freedom Report and the 1999 Country Report that religious conditions in China are now materially worse for Liu than when she first applied for relief in 2001. Although the evidence demonstrates that Christians face poor conditions in China, the only evidence that those conditions have worsened since Liu's 2001 hearing is a statement in the 2011 Religious Freedom Report that protections for religious freedoms have "deteriorated." But we have already concluded that this isolated statement in the Religious Freedom Report does not specify the time frame in which the conditions deteriorated, how much the conditions deteriorated, or in which regions the conditions deteriorated. *See Xing Zheng v. Holder*, 710 F.3d 769, 772 (7th Cir. 2013) (concluding that evidence showing "deterioration" of religious protections in China lacks specificity required to show material change in country conditions); *Moosa*, 644 F.3d at 387. Thus, the Board's conclusion that Liu's case did not warrant reopening was not an abuse of discretion, and the petition for review is DENIED.