**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0013n.06
Filed: January 8, 2009

**No. 08-3001**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NDUE PRENDI, | ) | |
| | ) | **ON PETITION** FOR |
| **Petitioner**, | ) | REVIEW OF AN ORDER OF |
| | ) | THE BOARD OF |
| v. | ) | IMMIGRATION |
| | ) | APPEALS |
| MICHAEL B. MUKASEY, | ) | |
| | ) | **OPINION** |
| **Respondent.** | ) | |

**BEFORE: GUY and GRIFFIN, Circuit Judges; and WATSON, District Judge.**[*]

**MICHAEL H. WATSON, District Judge.** Petitioner Ndue Prendi seeks review of

the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ")

denial of Prendi's applications for asylum, withholding of removal, and relief under the

Convention Against Torture ("CAT"). Prendi alleges he was subjected to politically

motivated mistreatment in his home country, Albania, and fears future persecution if he is

forced to return. Prendi argues the BIA erred by not remanding the case to the IJ after

finding Prendi's asylum application was timely, by failing to make a definitive credibility

---

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

finding, and by adopting the IJ's finding that changed country conditions rebutted his fear of future persecution. We find that substantial evidence supports the IJ's finding of fundamentally changed country conditions, and therefore deny the petition for review.

## I. BACKGROUND

Prendi is a native and citizen of Albania. He asserts he fled Albania to escape violence directed toward him because of his support of the Democratic Party.

At the merits hearing before the IJ, Prendi testified that he and his family spent two years in an internment camp from 1968 to 1970 because his father was caught baptizing Prendi's brother. Prendi further asserted that he was imprisoned for two and a half months after he was caught trying to escape Albania on September 13, 1990. He maintained that he was beaten during his imprisonment, and that his captors withheld food.

Prendi also testified about his activities with the Democratic Party of Albania. He averred he encouraged people from his village, Kallmet, to attend a rally in the city of Lezhe in January 1991. Prendi stated that in February 1991, he traveled to Tirane to participate in a demonstration. He indicated that on the way home after the demonstration he was arrested and detained for five days, and that he was beaten and mistreated while he was detained. On March 31, 1991, Prendi participated in Albania's first pluralist election, and voted for Democratic Party candidate Azem Hajdari. Prendi said he became an official member of the Democratic Party in July 1991.

In addition, Prendi testified that he participated in the next election, which took place on March 22, 1992. He said he was at the polling place trying to convince people to vote for the Democratic Party when three masked people abducted him. Prendi asserted they had a gun. He stated the three people beat him on the back and took him to a place called Greek of Luzhise, where they put him in cold water, laughed at him, and asked him why he was in favor of democracy. The Democratic Party prevailed in the March 1992 election.

Prendi testified that the next incident occurred on the evening of September 15, 1994, at a café in his village. He maintained that while he was inside the café drinking coffee, the owner, who was a communist, turned out the lights. Prendi indicated that while the lights were out, three people beat him, telling him that this was the democracy for which he had been working. He indicated that such attacks were common.

The Socialists regained power in Albania in 1997. The next election was scheduled toward the end of June 2000. Prendi maintained that during that period he had spoken out against a Socialist deputy who was a candidate in the upcoming election, asserting the Socialist was corrupt and failed to keep his promises. Prendi testified that on June 10, 2000, two policemen and two Socialist Party members took him away in a truck. He said they accused him of slandering the Socialist candidate. Prendi averred that when the truck was about five kilometers outside the village, it collided with a small car. He said he escaped while his captors got out of the truck to view the accident. Prendi stated he then went to a

cousin's house, where he stayed while his cousin made arrangements for Prendi to leave Albania.

Prendi illegally entered the United States on June 27, 2000. On March 9, 2001, after Prendi failed to appear for a hearing, an IJ ordered him removed *in abstentia.* The case was later reopened, and, on June 27, 2003, Prendi filed an application for asylum. On the same date, Prendi appeared at a hearing before an IJ and conceded removability.

A different IJ conducted the merits hearing and issued an oral decision on March 14, 2006. The IJ's decision rested upon three findings. First, the IJ found that Prendi's asylum application was untimely. Second, the IJ concluded that Prendi's account of mistreatment in Albania was not credible. Third, the IJ found that Prendi was unable to show that he would be persecuted or tortured upon his return to Albania because the country conditions there had fundamentally changed since Prendi left. Based on these findings, the IJ denied Prendi's application for asylum and withholding of removal, and ordered that Prendi be removed from the United States to Albania.

Prendi appealed the IJ's decision. The BIA issued its written order dismissing Prendi's appeal on December 19, 2007. The BIA agreed with Prendi that his asylum application was timely, and assumed that his testimony concerning his mistreatment in Albania was credible. The BIA nevertheless upheld the IJ's finding that Prendi had not

established a well-founded fear of future persecution in light of fundamentally changed country conditions.

Prendi timely filed his petition for review of the BIA's order on January 2, 2008.

## II.  ANALYSIS

### A.  Standard of Review

When the BIA summarily affirms a portion of the IJ's decision without discussing the relevant issues in-depth, this Court reviews the IJ's ruling as the final agency decision. *Sarr v. Gonzales*, 485 F.3d 354, 359 (6th Cir. 2007).  Factual findings, including findings of changed country conditions, are reviewed under the substantial evidence standard. *Ndrecaj v. Mukasey*, 522 F.3d 667, 672 (6th Cir. 2008).  Under that standard, the agency's findings of fact must be accepted unless any reasonable adjudicator would be compelled to conclude otherwise. *Id*. at 672-73.

### B.  Fundamentally Changed Country Conditions

Prendi raises three issues.  First, Prendi asserts the BIA erroneously failed to remand the case to the IJ after it found that Prendi's asylum application was timely.  Second, he argues the BIA erred by failing to make a definitive credibility finding.  Third, Prendi contends the BIA committed error by finding that Prendi's fear of future prosecution was rebutted by evidence of changed country conditions.  Because the BIA affirmed only the IJ's finding of changed country conditions, the Court will restrict its review to that issue.

Under § 208(a) of the INA, an alien may be granted asylum if he is a "refugee." 8 U.S.C. § 1158(a). A refugee is an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). A demonstration of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The government may overcome this presumption by showing, by a preponderance of the evidence, that there has been "a fundamental change in the circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality." 8 C.F.R. § 208.13(b)(1)(i)(A).

In the instant case, the IJ's alternative finding of changed country conditions was based primarily upon Asylum Profiles and Country Reports for Albania. The IJ noted the State Department's May 2001 Asylum Profile indicated there was virtually no evidence that individuals were being targeted for mistreatment on political grounds in Albania. The same Profile stated "[t]he Government has neither the means nor the will to carry out systematic persecution."

The IJ also considered the 2004 Asylum Profile, which indicated that since 1998, Albania's human rights record had steadily improved. Moreover, the Profile noted, "there is no indication the Socialist Party, either through its own organization or through

Government authorities, is engaged in a pattern of repression or violent behavior against its opponents." In addition, the Profile stated that the nationwide elections held in October 2000 were conducted in a calm and orderly fashion, and that the 2001 Parliamentary elections were generally peaceful. The Profile also indicated that no politically motivated killings occurred during 2001–2003.

Next, the IJ observed that the Country Reports for 2003, 2004, and 2005 all indicated the absence of political killings, politically-motivated disappearances, and cases of detention for strictly political reasons. The 2005 Country Report further noted that Albanian law recognized freedom of speech and of the press, and that the government generally respected those rights in practice. Additionally, the 2005 Report stated that individuals were free to criticize the government in print and broadcast media. The 2005 Report also indicated that the government generally respected the rights to freedom of assembly and freedom of religion. Furthermore, the 2005 Report pointed out that Parliamentary elections were held in Albania in July. The 2005 Report also disclosed that individuals and parties were free to declare their candidacy and stand for election. Although the elections complied only partially with international standards, the 2005 Report did not indicate any instances of violence associated with the elections. In addition to this evidence, Prendi acknowledged that the head of the newly elected government in Albania was Sali Berisha, who has been a member of the Democratic party since its inception.

Prendi offered a February 11, 2006 article from Albanian newspaper, *The Koha Jone*. The article concerns the murder of three people in the village of Kucove. It is far from evident, however, that the murders were politically motivated.

Prendi acknowledges that it was proper for the BIA and IJ to rely on State Department reports as a basis to rebut a well-founded fear of future persecution. He argues, however, that in this case the IJ relied too heavily on the Country Reports. Prendi also suggests the Country Reports contain numerous inconsistencies and are politically colored to maintain good political ties with the country of origin. Prendi cites decisions from other circuits in support of these propositions. *See Galina v. I.N.S.*, 213 F3d 955, 959 (7th Cir. 2000) (Country Reports should be treated "with a healthy scepticism, rather than, . . . as Holy Writ."); *Shah v. INS*, 220 F.3d 1062, 1069 (9th Cir. 2000)(error to rely on State Department assertion which amounted to conjecture).

Respondent asserts the IJ properly relied on Country Reports and Asylum Profiles to assess country conditions in Albania. Respondent avers the State Department reports constitute substantial evidence supporting the IJ's decision, and that Prendi did not present compelling evidence to the contrary. Moreover, Respondent points out that this Court has recognized in similar cases that country conditions in Albania have fundamentally changed.

Country Reports and Asylum Profiles may constitute substantial evidence supporting agency decisions denying asylum. *Ramaj v. Gonzales*, 466 F.3d 520, 531 (6th Cir. 2006).

Although State Department reports may be problematic sources on which to rely, they are, nonetheless, generally the best evidence available to ascertain country conditions. *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004). Furthermore, although a finding of changed country conditions must be individualized*, Gjyzi v. Ashcroft*, 386 F.3d 710, 715 n.1 (6th Cir 2004), it is notable that this Court has repeatedly upheld denials of asylum on the basis of fundamentally changed conditions in Albania. *See, e.g., Ndrecaj*, 522 F.3d at 676 ("[W]e have previously stated that the conditions in Albania are 'fundamentally changed.'"); *Ceraj v. Mukasey*, 511 F.3d 583, 593 (6th Cir. 2007) ("This court has likewise repeatedly concluded that the conditions in Albania have improved to such an extent that there is no objective basis for a well-founded fear of future persecution based on political or religious beliefs."); *Ramaj*, 466 F.3d at 531 ("The country reports relied upon by the IJ constitute substantial evidence supporting the conclusion that country condition in Albania have improved to the point that any presumption of a well-founded fear of future persecution is rebutted."); *Lumaj v. Gonzales*, 462 F.3d 574, 578 (6th Cir. 2006) (accepting Country Report's statement that there was "'virtually no evidence that individuals are targeted for mistreatment on political grounds'" in Albania).

Here, the IJ consulted the Asylum Profiles for Albania for 2001 and 2004. He also examined the Country Reports for 2003, 2004, and 2005. The reports consistently convey the absence of politically motivated violence or persecution in Albania. In light of this

record, it cannot be said that any reasonable adjudicator would be compelled to reach a contrary conclusion. The Court finds that substantial evidence supported the IJ's determination that country conditions had fundamentally changed such that Prendi no longer had a well-founded fear of persecution. As a result, Prendi cannot meet the INA's definition of "refugee." *See* INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). Consequently, Prendi is ineligible for asylum. *See* INA § 208(a), 8 U.S.C. § 1158(a).

**C. Withholding of Removal and CAT Claims**

The above analysis addresses only Prendi's application for asylum. Respondent argues the Court lacks jurisdiction to review the denial of Prendi's applications for withholding of removal and relief under the CAT because Prendi failed to advance these claims in his brief before the BIA. In addition, Respondent maintains that Prendi has waived these claims by failing to argue them in his brief before this Court.

This Court lacks jurisdiction to review issues that were not raised and administratively exhausted below. INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); *Alzoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007). In his brief before the BIA, Prendi did not specifically address the denial of his applications for withholding of removal or for relief under CAT. The Court, however, need not reach the issue of waiver. Since Prendi cannot satisfy the standard for asylum, it follows he cannot meet the more stringent standards which govern his withholding

of removal and CAT claims.  *See Ndrecaj*, 522 F.3d at 677; *Sarr v. Gonzales*, 485 F.3d 354,

361-62 (6th Cir. 2007).

### III.  CONCLUSION

Substantial evidence supported the IJ's finding of fundamentally changed country

conditions in Albania.  Accordingly, we **DENY** Prendi's petition for review.