NOT RECOMMENDED FOR FULL-TEXT PUBLICATON
File Name: 15a0214n.06

No. 14-3569

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 18, 2015
DEBORAH S. HUNT, Clerk

YUSSUF MOHAMMED S. MECCA,      )
                                                           )
                    Petitioner,                       )        ON PETITION FOR REVIEW
                                                           )        OF A DECISION OF THE
          v.                                             )        BOARD OF IMMIGRATION
                                                           )        APPEALS
ERIC H. HOLDER, JR.,                     )
                                                           )        OPINION
                    Respondent.                     )

BEFORE:      KEITH, MERRITT, and BOGGS, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.**  Petitioner Yussuf Mohammed S. Mecca ("Mecca"), a native and citizen of Tanzania, petitions for review of the decision of the Board of Immigration Appeals ("BIA") dismissing his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We **DENY** Mecca's petition for review.  We **AFFIRM** the decision of the BIA.

## I. BACKGROUND

Mecca was born in Zanzibar, Tanzania.  In 1998, he came to the United States on a student visa to attend Franklin University, where he received his master's degree.  After completing his master's degree, Mecca returned to Tanzania.  Mecca testified that around August 2000, he became involved in politics, joining the Civic United Front ("CUF"), an opposition political party in Tanzania.  Because the CUF opposed the political party in control at the time, Mecca began to encounter problems with the Zanzibari authorities

because of his participation in CUF. Mecca testified that he was detained on several occasions by Zanzibari authorities.

One significant detention began on January 27, 2001. Prior to this date, the CUF contested the previous 2001 elections and demanded a rerun. The government refused. On January 25 and January 26, 2001, the CUF conducted demonstrations to protest the elections. These demonstrations were met with hostility and violence, and some demonstrators were killed. Mecca testified that on January 27, 2001, he was taken from his home by authorities and detained for two weeks. During this time, he was physically abused. Mecca testified to being beaten. He also testified to being assaulted with a knife and suffering injuries from hot metal and electrical cables. He testified that he was questioned about activities that he had no knowledge of. Mecca was never formally charged. He was released after signing a paper stating that he would not participate in the CUF upon his release.

After Mecca was released, he learned that his brother had been killed by authorities on January 27—the same day that Mecca was arrested. Because of his brother's death, Mecca testified that he was angry and felt compelled to continue his participation in the CUF, albeit secretly. Because of the ongoing hostilities, Mecca decided to flee Tanzania in March of 2001. He initially went to Oman, then the United Kingdom. He finally decided to return to the United States because his student visa was still valid.

In 2001, Mecca filed an application for asylum, withholding of removal, and protection under CAT. On June 15, 2011, an individual hearing was held by an Immigration Judge ("IJ"). The IJ denied all of Mecca's applications, finding that Mecca

met his rebuttable presumption of past persecution, but that the presumption had been rebutted by the changed conditions in Tanzania. The IJ also found that Mecca was not eligible for asylum under 8 C.F.R. § 1208.13(b)(1)(iii)(A) and *Matter of Chen*, 20 I&N Dec. 16 (BIA 1989), because he failed to establish that his past persecution was sufficiently severe to warrant a grant of asylum. Additionally, the IJ found that the Mecca did not establish that there was a reasonable possibility that he would suffer other serious harm. Mecca filed a timely appeal to the BIA on July 13, 2012. The BIA dismissed Mecca's appeal. The BIA concluded that the record supported the IJ's conclusions that Mecca could not establish a well-founded fear of persecution due to the significant change in conditions in Tanzania. [R. 7 at 4.] Mecca filed this appeal.

## II. STANDARD OF REVIEW[1]

In considering a petition for review of a decision of the BIA, we review the Board's legal conclusions *de novo*. *See Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009). The BIA's factual findings are reviewed using the substantial evidence standard, in which "we uphold a BIA determination as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004). Factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Karimijanaki,* 579 F.3d at 714 (quoting 8 U.S.C. § 1252(b)(4)(B)). Under this deferential standard, "we may not reverse the Board's determination simply because we would have decided the matter differently." *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)

---

[1] The REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, applies to "applications for asylum, withholding of removal, or other relief from removal filed on or after May 11, 2005." *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009). We note that because Mecca's application was filed prior to May 11, 2005, it is not governed by the provisions of the REAL ID Act.

(citing *Klawitter v. INS,* 970 F.2d 149, 151–52 (6th Cir. 1992)). We may reverse, however, if the evidence presented by Mecca "not only supports a contrary conclusion, but indeed *compels* it." *Mikhailevitch*, 146 F.3d at 388.

"Where the BIA reviews the IJ's decision *de novo* and issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination." *Koita v. Mukasey,* 314 F. App'x 839, 842 (6th Cir. 2009) (citing *Morgan v. Keisler,* 507 F.3d 1053, 1057 (6th Cir. 2007)). However, this court also reviews the IJ's decision "to the extent the BIA adopted the IJ's reasoning." *Id.* (citation omitted).

## III. DISCUSSION

Mecca seeks review of the BIA's dismissal of his applications for asylum, withholding of removal, and protection under CAT. Specifically, Mecca seeks review of the BIA's finding that "country conditions in Tanzania have changed such that [he] no longer has a well-founded fear of persecution." We address each argument in turn.

### A. *Asylum*

Asylum may be granted to an applicant if it is determined that such applicant is a "refugee." 8 U.S.C. § 1158(b)(1)(A). A "refugee" is defined as any person "who is unable or unwilling to return to the person's country of nationality 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1101(a)(42)). The burden of proof rests on the applicant to establish that he or she is a refugee, and that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one

4

central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). The applicant's testimony, alone, may suffice to meet the applicant's burden, "if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii).

To establish a well-founded fear of persecution, the applicant must show: (1) that he has a fear of persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) that there is a reasonable possibility of suffering such persecution if he were to return to that country; and (3) that he is unable or unwilling to return to that country because of such fear. *Pilica v. Ashcroft,* 388 F.3d 941, 950 (6th Cir. 2004) (citation omitted). Thus, a well-founded fear of future persecution has both an objective and subjective component: "an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Id.* (citation omitted).

An applicant who establishes past persecution will be presumed to have a well-founded fear of persecution on the basis of the original claim. 8 C.F.R. § 208.13(b)(1). This presumption may be rebutted "if the government establishes, by a preponderance of the evidence, that there has been a fundamental change in country conditions such that the applicant no longer has a well-founded fear of persecution," *Pilica*, 388 F.3d at 950 (citing *Mikhailevitch,* 146 F.3d at 389; 8 C.F.R. § 208.13(b)(1)(i)), or that internal relocation is reasonably possible.[2] 8 C.F.R. § 208.13(b)(1)(i)(B).

---

[2] Because Mecca did not directly address the IJ's finding that he could safely relocate to mainland Tanzania, the BIA did not disturb the IJ's decision on this issue.

We note that Mecca was found to be a credible witness and successfully made a showing of past persecution. Thus, the issue is whether the government rebutted the presumption of future persecution. Mecca argues that the government did not. Mecca's basis for review rests on the BIA's finding that conditions have changed in Tanzania so as to abate Mecca's "well-founded fear of persecution." In determining that Mecca no longer had a well-founded fear of persecution, the BIA relied on the State Department's 2010 Country Report, and noted that (1) there have been no evidence of problems in the electoral process in Tanzania since 2009; (2) the government observed prohibitions on arbitrary arrests and detentions during the 2010 election period; (3) there is now a power sharing agreement between the ruling party and the respondent's own opposition party, the CUF; and (4) although there were individual instances of police violence against non-political criminals, there were no reported politically motivated killings or politically motivated disappearances.

Mecca asserts that the BIA erred in finding that conditions have changed in Tanzania. To support this assertion, Mecca contends that the BIA relied on "selective passages in the Report indicating apparent changes in human rights conditions, but neglected to mention other passages showing substantial human rights violations relevant to petitioner's claim." [Petitioner's Br. at 18.] For example, Mecca points to one passage in the report that states:

> During voter registration from June 2009 to May [sic], there were several instances in which Zanzibari 'special units' were involved in disturbances. In August 2009 the Zanzibar government militia reportedly fired bullets into the air to disperse crowds of CUF supporters gathered at registration facilities on Pemba to protest the registration process. According to CUF. [sic] According to CUF, amidst escalating violence throughout the month of August, soldiers arrested and beat several party supporters.

6

*Id.* Additionally, Mecca points to another section of the report stating that "authorities maintain 'special units' that operate independently from union security forces and have been used for political coercion." Petitioner's Br. at 19 (citing A.R. 244). Mecca also highlights a statement in the report that there are "numerous human rights problems in the country including the use of excessive force by military personnel," and that "security forces killed civilians during the year." *Id.*

However, as stated above, under the substantial evidence standard, factual findings are reviewed for substantial evidence and "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Karimijanaki*, 579 F.3d at 714. For us to reverse the BIA's factual findings, the evidence need "not only support[] a contrary conclusion, but indeed compel[] it." *Mikhailevitch*, 146 F.3d at 388. It is well established in this circuit that Country Reports and Asylum Profiles issued by the U.S. Department of State may constitute substantial evidence supporting agency decisions denying asylum. *See Ramaj v. Gonzales*, 466 F.3d 520, 531 (6th Cir. 2006). This Circuit has found that "[a]lthough State Department reports may be problematic sources on which to rely, they are, nonetheless, generally the best evidence available to ascertain country conditions." *Prendi v. Mukasey*, 306 F. App'x 268, 272 (6th Cir. 2009) (citing *Mullai v. Ashcroft,* 385 F.3d 635, 639 (6th Cir. 2004).

It was not error for the IJ or the BIA to rely on the State Department's Country Report in concluding that the adverse conditions in Tanzania had changed. That Mecca can point to certain passages in the same report that he claims provide evidence of ongoing incidents of persecution is not conclusive because these incidents, as the IJ acknowledged, occurred in 2009, and subsequent elections presented no evidence of

further problems. Moreover, Mecca does not indicate that acts occurring after the 2009incident are directed toward the CUF. Indeed, with the exception of the electoral process in 2009, Mecca fails to acknowledge how any of these acts are linked to political opinions and/or associations. We, therefore, cannot say that Mecca's selection of passages in the report, when considered against the BIA's findings in the same report, compels a contrary conclusion.

Additionally, Mecca asserts that "the agency did not meaningfully and specifically address relocation" in terms of rebutting the presumption. [Petitioner's Br. at 21.] The BIA found that Mecca "did not directly address . . . the Immigration Judge's finding that he could safely relocate . . . ." Based on this finding, the BIA declined to disturb the IJ's ruling on the issue. Therefore, that issue is not properly before this Court for review, and consequently, is waived. *See INS v. Orlando Ventura*, 537 U.S. 12 (2002).

Thus, we affirm the BIA's Order dismissing Mecca's application for asylum.

### B. *Withholding of Removal*

An alien who is seeking withholding of deportation to a country must show that his "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b). "In order to make this showing, the alien must establish a 'clear probability' of persecution on account of one of the enumerated grounds." *Chen*, 20 I&N Dec. at 17 (citing *INS v. Stevic*, 467 U.S. 407, 413 (1984)). "This clear probability standard requires a showing that *it is more likely than not* that an alien would

8

be subject to persecution if returned to the country from which he seeks withholding." *Chen* at 17 (emphasis added).

Because Mecca does not meet the requirements for a granting of asylum, he necessarily cannot meet the more stringent requirements for withholding of removal. *Ben Hamida v. Gonzales*, 478 F.3d 734, 741 (6th Cir. 2007) (citing *Allabani v. Gonzales,* 402 F.3d 668, 675 (6th Cir. 2005)). As such, his application for withholding of removal is denied.

### C. Convention Against Torture (CAT)

Under CAT, Mecca must show "'that it is more likely than not that he… would be tortured if removed to the proposed country of removal.'" *Pilica*, 388 F.3d at 951 (quoting 8 C.F.R. § 208.16(c)(2)). Based on the foregoing however, there is no basis to believe that it is more likely than not that the Tanzanian government would persecute or torture Mecca. Mecca has not met the burden of proof to qualify for protection under CAT.

### IV. CONCLUSION

Because the government was able to establish a fundamental change in country conditions in Tanzania, Mecca cannot show that he has a well-founded fear of persecution. Thus, he is not eligible for asylum. Consequently, Mecca also cannot establish eligibility under the more stringent standard required for withholding of removal. Finally, Mecca does not qualify for protection under CAT. Accordingly, we **DENY** Mecca's petition for review, and **AFFIRM** the BIA's decision.