NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0444n.06

Case No. 22-3851

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>JONAS NSONGI MBONGA,</td><td>)</td><td rowspan="2"><strong>FILED</strong><br>Oct 13, 2023<br>DEBORAH S. HUNT, Clerk</td></tr>
<tr><td>Petitioner,</td><td>)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>ON PETITION FOR REVIEW</td></tr>
<tr><td></td><td>)</td><td>FROM THE UNITED STATES</td></tr>
<tr><td>MERRICK B. GARLAND, Attorney General,</td><td>)</td><td>BOARD OF IMMIGRATION<br>APPEALS</td></tr>
<tr><td>Respondent.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>O P I N I O N</td></tr>
</table>

Before: McKEAGUE, READLER, and DAVIS, Circuit Judges.

**McKEAGUE, Circuit Judge.** Petitioner Jonas Nsongi Mbonga, a native and citizen of the Democratic Republic of the Congo, seeks review of a Board of Immigration Appeals ("Board") order denying his motion to reopen removal proceedings. We previously affirmed the Board's denial of Nsongi Mbonga's applications for withholding of removal and protection under the Convention Against Torture. *Mbonga v. Garland*, 18 F.4th 889, 892 (6th Cir. 2021). For the reasons stated below, we now **DENY** Nsongi Mbonga's petition for review of his motion to reopen proceedings.

## I. BACKGROUND

Nsongi Mbonga fled the Democratic Republic of the Congo (DRC) under, as we previously noted, trying circumstances. *Mbonga*, 18 F.4th at 892. He was born in the DRC on January 20, 1990. He participated in an athletic club, where he practiced martial arts. The athletic club was

sponsored by a bodyguard for then-president of the DRC, Joseph Kabila. The bodyguard—also the president of a youth league for President Kabila's political party, the People's Party for Reconstruction and Democracy (PPRD)—recruited Nsongi Mbonga for a specific job: to be a member of a youth group aimed at creating "chaos" in the opposition party in the DRC, the Union for Democracy and Social Progress ("UDPS" in the French-language abbreviation). Petitioner's Br. 4. Nsongi Mbonga refused to participate in organized disruption of the opposition party and even succeeded in convincing other young members of the athletic club to reject similar recruitment attempts. Within several months, government forces attacked Nsongi Mbonga, allegedly for his refusal to associate with the ruling party's disruption campaign. This attack spurred his interest in joining the opposition UDPS party.

In July 2014, uniformed police officers approached Nsongi Mbonga while he was returning home from church. The officers confiscated his belongings, discovered his UDPS membership card, and beat him severely. After spending days in a medical center, Nsongi Mbonga began to fear for his safety and his life. With encouragement from his family, he fled to a town in Angola near the Congolese border. He returned to the DRC—specifically, Kinshasa—in January 2015 to be closer to his family and to attend a protest welcoming the return of the president of the UDPS back to the country. Nsongi Mbonga appeared at the protest wearing UDPS clothing and carrying a UDPS banner.

Soon after, in February 2015, police arrested Nsongi Mbonga and four others. The police took the five people to a detention center, where Nsongi Mbonga says he was tortured and beaten for his failure to join the governing political party. After being released, Nsongi Mbonga fled to his parents' village in Central Congo, a province in the DRC. Police continued to search for him in Kinshasa, eventually discovering his location through continued interrogation of his family.

Fearing for his life, Nsongi Mbonga again fled to Angola, where he remained for roughly three months before traveling to Brazil. In July 2018, Nsongi Mbonga completed a long journey through South and Central America to reach the United States. *Mbonga*, 18 F.4th at 893.

Two months later, the Department of Homeland Security (DHS) initiated removal proceedings against Nsongi Mbonga. He applied for asylum, withholding of removal, and relief under the Convention Against Torture. After a January 2019 hearing, an immigration judge denied relief on all claims, citing vague concerns about Nsongi Mbonga's credibility. *Id.* In July, the Board of Immigration Appeals reversed, finding that the immigration judge erred by failing to make an explicit credibility determination.

On remand in November 2019, a different immigration judge again denied relief, this time finding explicitly that Nsongi Mbonga did not credibly allege a fear of past persecution. Further, because of relevant intervening events in the DRC, the judge indicated that he would have denied relief even if he had found Nsongi Mbonga credible. In December 2018, during Nsongi Mbonga's removal proceedings, Félix Tshisekedi, the leader of the opposition UDPS party—the party to which Nsongi Mbonga belonged—was elected to the presidency of the Democratic Republic of the Congo. *Mbonga*, 18 F.4th at 893. Because the UDPS became the ruling party in the DRC, and because it entered into a power-sharing arrangement with President Kabila's PPRD party, the judge found it unlikely Nsongi Mbonga would be targeted for harm by PPRD members if he were to return to the country. As such, the judge found that DHS had demonstrated by a preponderance of the evidence that Nsongi Mbonga no longer had a well-founded fear of persecution in the DRC for his political opinions. Nsongi Mbonga again appealed to the Board.

This time, the Board dismissed the appeal. In its November 2020 opinion, the Board assumed Nsongi Mbonga's credibility and upheld the immigration judge's finding that changed

conditions in the DRC eliminated any fear Nsongi Mbonga could have of political persecution. *Id.* The Board further upheld the denial of Nsongi Mbonga's claims for withholding of removal, relief under the Convention Against Torture, and humanitarian asylum. *Id.* Nsongi Mbonga appealed to this Court.

In November 2021, we affirmed. We held that, even assuming Nsongi Mbonga's credibility, the Board did not commit any error in holding that governmental and political changes in the DRC eliminated Nsongi Mbonga's fear of political persecution. *Id.* at 894. Because claims for withholding of removal and relief under the Convention Against Torture require a similar showing of a fear of future persecution, we affirmed the Board's denial of those claims too. *Id.* at 898–99. Finally, we concluded that Nsongi Mbonga had not adequately raised a "humanitarian-asylum" claim—which does not require a well-founded fear of future persecution—in his briefing before this Court. *Id.* at 898; *see also* 8 C.F.R. § 1208.13(b)(1)(iii) (describing how an applicant may be granted asylum in the absence of a well-founded fear of persecution by demonstrating the "severity of the past persecution" or by showing "a reasonable possibility" that they may suffer "other serious harm" in their home country); *Nozadze v. Sessions*, 740 F. App'x 476, 483 (6th Cir. 2018).

While his appeal before this Court was pending, Nsongi Mbonga filed a motion to reopen immigration proceedings before the Board in February 2021. He argued that he could provide material and previously undiscoverable evidence of changed country conditions that would suffice under 8 C.F.R. § 1003.2(c)(1) to reopen removal proceedings. In essence, Nsongi Mbonga argued that, despite the presidential transition in the DRC, former President Kabila retained significant power and influence over security forces, suggesting that Nsongi Mbonga might continue to face recrimination should he return home. As support, he submitted two declarations from experts—

one from Thomas Turner, a DRC specialist working at Amnesty International, and another from Rachel Sweet, a global affairs scholar at the University of Notre Dame—describing the political landscape in the DRC following President Kabila's late-2018 loss to President Tshisekedi. He further submitted a psychiatric report, a neurological report, a U.S. Department of State human rights report on the DRC, news articles from throughout 2020 describing Congolese political affairs following the 2018 election, and several affidavits attesting to the truth of certain claims Nsongi Mbonga advanced during his initial proceedings.

The Board denied his motion. It found that Nsongi Mbonga had not demonstrated that any of the evidence he sought to present on reopening was new and previously unavailable or undiscoverable. Taking its November 2020 opinion as the latest date by which Nsongi Mbonga could have raised new arguments or introduced new evidence, the Board found that none of the evidence cited would have been previously unavailable within the meaning of 8 C.F.R. § 1003.2(c)(1). Nsongi Mbonga argued that he could provide sufficient *previously undiscoverable evidence* of former President Kabila's continued influence in the Congolese security forces to justify reopening removal proceedings. The Board rejected this argument, noting that the immigration judge acknowledged in the first February 2019 order that leadership in the DRC had changed, indicating that Nsongi Mbonga was less likely to face political persecution than when he had left the country. After the first remand, the new immigration judge further developed the reasoning for rejecting Nsongi Mbonga's arguments, finding that DHS had demonstrated that country conditions had changed—from the 2018 election and subsequent power-sharing arrangement—such that Nsongi Mbonga no longer had a well-founded fear of persecution.

The Board found that none of the evidence Nsongi Mbonga cited in his motion to reopen suggested that any of the basic political conditions on which he relied in his initial claim had

changed for the worse. The two expert affidavits, for example, were created after the Board's prior decision in November 2020 but discussed the election of President Tshisekedi in December 2018 and general political conditions over the following two years—all information that was discoverable before the Board's 2020 decision. The Board further acknowledged that two news articles included facts that were previously unavailable, but it found that those facts—that President Tshisekedi had ended his coalition with former President Kabila's political party and that continued tension existed between the two parties—lent support to DHS's position that President Tshisekedi had gained some strength in his political position. At minimum, the Board found that the facts did not establish a material change regarding Nsongi Mbonga's fear of future harm.[1] Finally, as to the medical declarations and other supporting affidavits, the Board held that he had shown no reason why the additional evidence could not have been discovered previously. The Board acknowledged that Nsongi Mbonga may have had limited opportunities to obtain supporting evidence during his detention in the early months of his immigration proceedings. But Nsongi Mbonga offered no reason why he could not have obtained the evidence in the months following his release. Nsongi Mbonga now timely appeals the Board's denial of his motion to reopen.

## II. STANDARDS OF REVIEW

We review the Board's denial of a motion to reopen immigration proceedings for an abuse of discretion. *Gafurova v. Whitaker*, 911 F.3d 321, 325 (6th Cir. 2018). The decision to grant or deny a motion to reopen or reconsider is, by regulation, within the Board's broad discretion. 8 C.F.R. § 1003.2(a), (c)(1); *see also Santos-Zacaria v. Garland*, 598 U.S. 411, 425 (2023); *INS*

---

[1] Nsongi Mbonga claims that the Board "did not question" whether his evidence "was material to his asylum claim." Petitioner's Br. 8. In fact, the Board held that two news articles were not material to any change in Nsongi Mbonga's fear of future harm. Admin. R. at 3.

*v. Doherty*, 502 U.S. 314, 323 (1992) (assessing the Attorney General's "broad discretion" to grant or deny motions to reopen). The Board abuses its discretion when it denies a motion to reopen without a rational explanation, inexplicably departs from established policies, or rests its decision on an impermissible basis, such as invidious discrimination against a specific race or group. *Gafurova*, 911 F.3d at 325. We may not reverse simply because we "would have decided the case differently." *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009). We may only reverse under the substantial-evidence standard, which requires that we uphold the Board's administrative findings of fact unless we find that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Zometa-Orellana v. Garland*, 19 F.4th 970, 976 (6th Cir. 2021); *Gafurova*, 911 F.3d at 325. We review questions of law de novo, but we give substantial deference to the Board's interpretations of the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., and its accompanying regulations. *Kukalo v. Holder*, 744 F.3d 395, 402 (6th Cir. 2011).

### III. DISCUSSION

Nsongi Mbonga challenges the Board's denial of his motion to reopen removal proceedings. He is not before us now on the merits of the denial of his asylum, withholding of removal, and Convention Against Torture claims, which we have already affirmed. *See Mbonga*, 18 F.4th at 892. Instead, he asks that we reverse the Board of Immigration Appeals on the comparatively narrow ground that it erred in denying his motion to reopen. Because the Board did not abuse its discretion, we cannot grant Nsongi Mbonga's requested relief.

Nsongi Mbonga challenges the Board's denial in three ways. He claims that the Board (1) misinterpreted the regulation governing the reopening of Board proceedings, 8 C.F.R. § 1003.2(c)(1); (2) abused its discretion by finding that evidence he cited in his motion to reopen was discoverable at his former hearing; and (3) engaged in impermissible appellate fact-finding

by determining that none of his offered evidence suggested he was likely to suffer future harm. None of these arguments succeeds.

Department of Justice immigration regulations govern Board procedures. A party to removal proceedings may move to reopen proceedings after the Board has rendered a decision in the matter. 8 C.F.R. § 1003.2(a). The party must state "new facts that will be proven at a hearing to be held if the motion is granted." *Id.* § 1003.2(c)(1). Importantly, a "motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." *Id.* The Board retains significant discretion to deny a motion to reopen "even if the party moving has made out a prima facie case for relief." *Id.* § 1003.2(a).

In sum, Nsongi Mbonga's appeal concerns (1) whether the Board erred by considering evidentiary exhibits created or available only *after* the November 2019 immigration judge hearing but *before* the Board's November 2020 decision, (2) whether the Board abused its considerable discretion in determining that the evidence Nsongi Mbonga offered was either previously available or immaterial to his claims, and (3) whether the Board engaged in impermissible appellate fact-finding in violation of immigration regulations.

## A. "Former Hearing"

As an initial matter, Nsongi Mbonga argues that the Board erred by misinterpreting the regulation governing motions to reopen proceedings. Specifically, he argues that the Board mistakenly interpreted "former hearing" to include the period during which his administrative appeal was pending before the Board. In his view, the "evidentiary record closed" in his case at his last appearance before an immigration judge, which occurred in November 2019. Petitioner's Br. 11. In denying his motion to reopen, the Board noted that "[s]ome of the reports and articles

submitted with the motion were published and available while [Nsongi Mbonga's] prior appeal was still pending"—in other words, prior to the Board's November 2020 decision. Admin. R. at 3. As Nsongi Mbonga interprets the regulation, the Board must instead limit what can be considered previously discoverable evidence to the evidence in existence before the *last hearing before an immigration judge*. We disagree. But regardless of whether the Board misinterpreted "former hearing," we would still deny the petition because the Board correctly noted that none of the *information* underlying the reports and articles supporting Nsongi Mbonga's claim was previously unavailable.

The Board did not err as a matter of law when it considered evidence that was published during Nsongi Mbonga's initial appeal. Keeping in mind that the Board is already entitled substantial deference in its interpretation of immigration regulations, *see Kukalo*, 744 F.3d at 399, this Court has declined to reopen or remand proceedings where "new" evidence—evidence created or published after the last hearing before an immigration judge—was only "cumulative" of evidence that had been offered earlier. *See Solaka v. Wilkinson*, 844 F. App'x 797, 802 (6th Cir. 2021). Where the information presented in a "new" article or report relies on incidents that were already considered in different forms before either the Board or an immigration judge, the Board has the power to assess whether that evidence was previously available for the purpose of appeal. *See id.* This Court has similarly concluded affidavits were discoverable where they "should have been available" to the petitioner before the Board's—not the immigration judge's—most recent order. *Qeraxhiu v. Gonzales*, 206 F. App'x 476, 481 (6th Cir. 2006).

Nsongi Mbonga does not point to any precedent that requires us or the Board to interpret "former hearing" to mean the point at which the evidentiary record before the immigration judge closes. Indeed, we think such a narrow interpretation unnecessarily restricts the Board's discretion.

Motions to reopen removal proceedings are generally disfavored in light of the "strong public interest in the finality of removal orders." *Trujillo Diaz v. Sessions*, 880 F.3d 244, 249 (6th Cir. 2018). For the Board's discretion—not to mention administrative finality—to mean anything, it "must be" that the Board has wide latitude in deciding when to reopen a case. *INS v. Abudu*, 485 U.S. 94, 108 (1988) (quoting *INS v. Wang*, 450 U.S. 139, 144 n.5 (1981)). The party moving to reopen bears a heavy burden, *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004), because the public interest in bringing litigation to a prompt close is so strong. *Abudu*, 485 U.S. at 107. Like petitions for rehearing and motions for new trials, motions to reopen serve an important individual interest—giving a party a fair opportunity to develop its case. *Id.* But, like petitions for rehearing and motions for new trials, such an interest can only go so far when balanced against the strong public interest in the finality of litigation. *Id.*

In short, we see no strong justifications favoring an interpretation that would narrow the Board's flexibility to bring its actions to an end. We certainly cannot say the Board's *own* interpretation of its rule is unreasonable. Given that Nsongi Mbonga has not directed us to any precedent in which we adopt his definition of "hearing," he cannot show that the Board erred, let alone that the Board exceeded the bounds of deference we afford to its interpretation of immigration regulations.

We need not rely solely on any specific interpretation of the term "former hearing," however, because the Board adequately determined that all Nsongi Mbonga's evidence either (1) repackaged information that he had already provided during his initial proceedings or (2) would not materially affect Nsongi Mbonga's fear of future harm in returning to the DRC.

### B. Availability and Materiality

We review whether evidence was earlier discoverable—a factual question—for an abuse of discretion, where we must uphold the Board's finding if supported by substantial evidence. *Holder*, 565 F.3d at 976; *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). We may reverse only if the evidence on the record compels a contrary conclusion. *Gafurova*, 911 F.3d at 325. We apply a similar standard to materiality determinations: the Board only abuses its discretion when it denies a motion to reopen where the evidence presented would likely change the outcome of the proceedings. *Akrawi v. Garland*, No. 21-4071, 2023 WL 2293532, at *9 (6th Cir. Mar. 1, 2023); *see also Hernandez-Perez v. Whitaker*, 911 F.3d 305, 320–21 (6th Cir. 2018).

Nsongi Mbonga provided twelve exhibits in support of his motion to reopen before the Board. Two January 2021 exhibits—the Turner and Sweet declarations—provide expert assessments of country conditions in the DRC in the years following the December 2018 presidential election. Nsongi Mbonga attached a 2019 U.S. State Department Human Rights Report describing the turmoil in the DRC in the immediate aftermath of the 2018 election, including human rights abuses by government forces in early 2019. He further provided five news articles: a January 2020 article from *The Guardian*, a July 2020 article from *Al Jazeera*, a November 2020 Kivu Security Organization security assessment, and two December 2020 articles from the Council on Foreign Relations and *Deutsche Welle*. Each article described developments in the DRC in the years following the election. Nsongi Mbonga attached two medical exhibits— an undated psychiatric report and a January 2021 neurological report—describing symptoms of PTSD that Nsongi Mbonga has suffered since departing the DRC. Notably, the neurological report relies solely on the psychiatric report for its conclusions; the neurologist did not conduct an independent examination of Nsongi Mbonga. Finally, Nsongi Mbonga submitted two affidavits: a

January 2021 affidavit from former counsel explaining why hospital records were not earlier available and a February 2021 affidavit from Nsongi Mbonga's cousin attesting that Nsongi Mbonga was arrested during a protest against the Congolese government.

The Board determined that five of the exhibits—the Turner and Sweet declarations, the State Department report, and the *Al Jazeera* and Kivu articles—contained information about the Congolese presidential election in 2018 and political conditions in the country over the following two years, which was information previously discoverable and available to Nsongi Mbonga. The Board also determined that two news reports—the Council on Foreign Relations and *Deutsche Welle* articles—*did* contain previously unavailable information. Specifically, both articles described how the power-sharing agreement between President Tshisekedi and former President Kabila's political party broke down in late 2020. *See* Cai Nebe & Wendy Bashi, *DR Congo Political Crisis*, Deutsche Welle (Dec. 8, 2020), https://perma.cc/3UEC-EVMW; Michelle Gavin, *Power-Sharing Agreement Breaks Down in DRC*, Council on Foreign Rels. (Dec. 18, 2020), https://perma.cc/RMQ9-5YR3. The Board further determined that Nsongi Mbonga had not shown why the medical declarations were previously unavailable—rather than alleging that new medical information had come to light, Nsongi Mbonga claimed the immigration judge had failed to take certain injuries into consideration. Finally, the Board found that neither of the two affidavits Nsongi Mbonga presented included new or previously unavailable information. Nsongi Mbonga does not challenge the denial of his motion to reopen based on the medical declarations, the former counsel's affidavit, or the cousin's affidavit. As such, he has waived any argument on appeal based on that evidence. *Citizens Coal Council v. U.S. EPA*, 447 F.3d 879, 905 (6th Cir. 2006) (en banc).

Nsongi Mbonga argues instead that the Turner and Sweet declarations on country conditions are independent pieces of new evidence that support reopening his case. He argues the

same for every news article outlined above, largely because each was published after the immigration judge's November 2019 decision. The Supreme Court has made clear that the Board is well within its broad discretion to decide "that the material adduced" by the petitioner "could have been foreseen or anticipated at the time of the earlier proceeding." *Doherty*, 502 U.S. at 326. Indeed, the Court recommends pleading as many claims as possible in the original proceeding, even if they may be inconsistent, to ensure that the petitioner has raised all arguments that could possibly be foreseeable at that time. *See id.* at 326–28. Nsongi Mbonga's initial claims for asylum largely distill into one argument: former President Kabila's influence in government and security forces—both before and after he lost the 2018 presidential election—suggests that Nsongi Mbonga will face recrimination for his support of a former opposition political party should he return to the DRC.

Aside from the *Deutsche Welle* and Council on Foreign Relations articles—which we address below—every additional piece of evidence Nsongi Mbonga attempts to introduce advances that central argument. For example, the State Department report describes "significant human rights issues" following the 2018 election; the latest events cited occurred in July 2019. Admin. R. at 99–101. The *Guardian* article outlines "rising tension" in early 2020 between President Tshisekedi and politicians loyal to former President Kabila, describing how the former president has "retained" influence in the country. Jason Burke, *Militia Raids Kill Dozens as DRC Plunges Deeper into Instability*, Guardian (Jan. 31, 2020, 12:00 AM), https://perma.cc/GK5R-ZZ8A. The Kivu article similarly depicts the dire human rights landscape in the DRC through November 2020, describing how factions of armed forces loyal to each political party engage in killings, abductions, and kidnappings. Pierre Boisselet, *Divisions Between Tshisekedists and*

*Kabilists Paralyze the State in Eastern DRC*, Kivu Security Tracker (Nov. 20, 2020), https://perma.cc/PN6Y-3LS3.

However, Nsongi Mbonga cannot overcome the high bar he must clear to show that the information contained in these sources was unavailable during his earlier proceedings. The claim that upon his return to the DRC he would face recrimination from President Kabila's supporters lies at the core of each of the above news articles he presented in his motion to reopen. That claim was foreseeable, was raised in the initial asylum proceedings, and was considered by the immigration judge on remand from the Board in November 2019, eleven months after the December 2018 Congolese presidential election. Both the Board and the immigration judge—as well as this Court—cited substantial evidence that the change in government rendered Nsongi Mbonga's fear of persecution unfounded. *See Mbonga*, 18 F.4th at 897 (collecting cases). Importantly, none of the above sources describes any *change* to the status quo—merely continued violence that has gone on since the immigration judge and Board last issued their opinions. Without more, this evidence suggests only that general political upheaval exists in the DRC—not a ground on which relief can be granted, *Yousif v. INS*, 794 F.2d 236, 242 (6th Cir. 1986), let alone one that compels any contrary conclusion to the Board's determination that the information was previously available. *See Gafurova*, 911 F.3d at 325. The general state of affairs—that a governmental change had occurred, that violence continued in the DRC, and that tensions remained between President Tshisekedi and former President Kabila—was known both to the Board and the immigration judge at nearly every stage of Nsongi Mbonga's proceedings. The information in these sources does not contradict that essential understanding.

Nsongi Mbonga faces a similar hurdle in his argument that the Turner and Sweet declarations constitute newly available evidence. He claims that the declarations "specifically

opine on the probability" that he will face future harm, "specifically address events" in late 2020 and 2021, and merit independent assessment as evidence in their own right under Federal Rule of Evidence 702. Petitioner's Br. 9–10. These arguments can be dispatched much as above: the two declarations may opine on the specific probability of future harm, but that determination—which is ultimately reserved to the immigration judge applying immigration regulations, 8 C.F.R. § 1208.13(b)(1)(i)—relies on information about the presidential election and its aftermath, almost all of which was discoverable before November 2019.

The later events the declarations do cite—the Turner declaration cites a 2020 brawl in the Congolese parliament and the Sweet declaration describes continued protests and military attacks through the end of 2020—fall into the same general category of information that supports only the existence of continued upheaval, *see Yousif*, 794 F.2d at 242, instead of a specific finding that Nsongi Mbonga's fear of future harm has fundamentally changed. Again, that information does not compel any contrary conclusion to the Board's determination. *See Gafurova*, 911 F.3d at 325. The fact that a declaration or affidavit relies on existing evidence to state a "new" conclusion does not mean it was unavailable. Rather, the conclusion should have been "foreseen or anticipated at the time of the earlier proceeding." *Doherty*, 502 U.S. at 326. Nsongi Mbonga's reliance on Federal Rule of Evidence 702 does not change this basic fact. When a party could have, with reasonable due diligence, presented information—like an expert assessment of a recent presidential election and the violence that occurred in the election's aftermath—to an immigration judge, he has not satisfied his burden to succeed in seeking a motion to reopen immigration proceedings. *See id.*; 8 C.F.R. § 1003.2(c)(1).

The remaining two news articles, according to the Board, *did* contain new information that was previously unavailable either to the immigration judge in November 2019 or the Board before

- 15 -

its November 2020 decision. Those articles—the Council on Foreign Relations and *Deutsche Welle* pieces—discuss a breakdown in the political status quo in the DRC. Specifically, they indicate that the power-sharing agreement between President Tshisekedi and former President Kabila collapsed in December 2020. *See, e.g.*, Gavin, *supra*. President Tshisekedi, in seeking to challenge former President Kabila's party's dominance in parliament, formally ended the agreement. *Id.* He ousted certain Kabila allies from the government, seeking to "reconfigure the balance of power" in the Congolese parliament. *Id.*

Of course, one plausible interpretation of the evidence suggests that increased turmoil between political parties as a result of the breakup might tend to increase violence against UDPS members. As the Council on Foreign Relations article says, "[T]here is no guarantee that changes in relative power at elite levels will translate to change in the direction of the country or the conditions of its people." *Id.* "No guarantee of positive change," though, does not mean that "change absolutely will not occur." It suggests the opposite may be true—in other words, although there is no guarantee of positive change, change is possible, and may even be likely. *Id.* So, another equally plausible interpretation—one that DHS and the Board both adopted and that the Council on Foreign Relations article suggests could come to pass—is that President Tshisekedi has actually consolidated political power in the Congolese government. He may, in fact, be strengthening his political position. Such a shift would suggest that UDPS members could receive the *benefit* of this change in political circumstances, rather than the detriment. This logic underpins this Court's caselaw finding that claimants lack a well-founded fear of persecution by a specific government when that government loses power or enters into a power-sharing arrangement. *E.g.*, *Mbonga*, 18 F.4th at 895 (collecting cases); *Mecca v. Holder*, 604 F. App'x 465, 468–69 (6th Cir. 2015). And given the deference we afford to the Board's materiality determination, such an inference

more than illustrates that substantial evidence supports the finding that Nsongi Mbonga no longer has a well-founded fear of persecution. This evidence would not likely change the outcome of the proceedings. *See Akrawi*, 2023 WL 2293532, at \*9. Sufficient evidence supports the conclusion that these two news articles are not material to Nsongi Mbonga's claims so as to justify reopening his removal proceedings.

## C. Appellate Fact-Finding

Finally, Nsongi Mbonga claims that the Board impermissibly engaged in independent factfinding, arguing that it was not permitted to "engage[] with" exhibits that Nsongi Mbonga and the government submitted in support and opposition of the motion to reopen. *See* Petitioner's Br. 14. Because the Board largely affirmed the immigration judge's fact findings, Nsongi Mbonga's argument on appeal does not apply to most of the exhibits he attached to his motion. We need only ask whether the Board impermissibly made materiality determinations for the two previously unavailable pieces of evidence—the Council on Foreign Relations and *Deutsche Welle* articles.

The Board did not err. As the government acknowledges, the Board is prohibited by regulation from engaging "in factfinding in the course of deciding cases, except that the Board may take administrative notice of facts that are not reasonably subject to dispute." 8 C.F.R. § 1003.1(d)(3)(iv)(A). However, to satisfy their burden for a motion to reopen, petitioners must present evidence that "appears to the Board" to be "material" and that "could not have been discovered or presented at the former hearing." *Id.* § 1003.2(c)(1). In essence, Nsongi Mbonga needed to make an initial showing that new evidence materially supported his claims for relief. *See Abudu*, 485 U.S. at 106–07; *Hyzoti v. Holder*, 517 F. App'x 354, 357 (6th Cir. 2013); *Thiam v. Barr*, 787 F. App'x 327, 329 (6th Cir. 2019); *see also Moosa v. Holder*, 644 F.3d 380, 385 (7th Cir. 2011). The Board must be empowered to evaluate whether that new evidence suggests a

material change to the merits of the applicant's claim. In order to provide a reasoned, rational explanation for denying a motion to reopen—required under this Court's precedent, *see Gafurova*, 911 F.3d at 325—the Board must necessarily possess the power to determine whether "the new evidence" makes any "difference to the asylum claim." *Thiam*, 787 F. App'x at 329; *see also Moosa*, 644 F.3d at 385 (concluding the Board must have "the option of looking at whether there is a plausible asylum claim at all"); *Le Bin Zhu v. Holder*, 622 F.3d 87, 92 (1st Cir. 2010) (holding that an applicant's failure to establish a credible asylum claim meant the Board could reasonably find that new evidence was immaterial). Accordingly, the Board did not abuse its discretion or act outside its authority by finding Nsongi Mbonga's previously unavailable evidence to be immaterial to his claims.

## IV. CONCLUSION

For the foregoing reasons, we **DENY** Nsongi Mbonga's petition for review.